343 So.2d 996 (1977)
WILLIAM T. BURTON INDUSTRIES, INC.
v.
M. D. WELLMAN, Jr.
No. 58394.
Supreme Court of Louisiana.
February 28, 1977.
Rehearing Denied April 7, 1977.[*]
*997 Walton J. Barnes, Barnes & Barnes, Baton Rouge, for defendant-applicant.
William J. Clarkson, Camp, Carmouche, Palmer, Carwile & Barsh, Lake Charles, for plaintiff-respondent.
SUMMERS, Justice.
William T. Burton Industries, Inc., instituted this action on April 23, 1974, against W. D. Wellman, Jr., to fix the boundary between its lands described as
The Northwest Quarter of the Northwest Quarter (NW-ź of NW-ź) of Section Twenty (20), Township Two (2) North, Range Five (5) West, in Vernon Parish,
and the lands of Wellman being
The North half (N-˝) of the Northeast Quarter (NE-ź) of Northwest Quarter (NW-ź) of Section Twenty (20), Township Two (2) North, Range Five (5) West.
Also beginning at the Southwest Corner of Northeast Quarter (NE-ź) of Northwest Quarter (NW-ź) of Section Twenty (20), Township Two (2) North, Range Five (5) West; thence running North 220 yards, thence East 110 yards, thence South 220 yards, thence West 110 yards to point of beginning.
Burton's petition alleged that its property was acquired on May 2, 1955, and that Wellman, or his predecessor in title, had erected fences along the east boundary of its property and wrongfully claimed that the fences constituted the proper boundary line separating their properties.
Burton prayed that a surveyor be appointed to survey the properties and file a proces verbal of his work according to law, and that there be judgment fixing the boundaries.
Before answering, Wellman filed a peremptory exception of prescription, alleging that Burton's cause of action was prescribed by the prescription of ten, twenty and thirty years under the provisions of Article 852 of the Civil Code. The exception was tried, evidence was adduced, and the trial judge maintained Wellman's plea of thirty years prescription. The boundary between the estates of Burton and Wellman was accordingly fixed and established as the fence line existing between said estates as established, marked and maintained by the erection of that fence in 1933, and as maintained and continued by Wellman and his predecessors in title from that date to the present time.
Burton appealed to the Third Circuit where the judgment of the trial court was reversed, and the case was remanded to the trial court. The Court of Appeal was of the opinion that the trial court erred in fixing the boundary line in the instant case without prior appointment of a surveyor, without the filing of a proces verbal of the surveyor's work and without a trial of the case on the merits.
At the outset it is necessary to consider the Court of Appeal's finding that in this boundary action the validity of the plea of prescription could not be determined in the trial of a peremptory exception prior to the appointment of a surveyor and a trial on the merits.
*998 The thirty-year prescription provided for by Article 852 of the Civil Code and maintained by the trial judge on the basis of Wellman's peremptory exception is acquisitive prescription. Thereby a mere possessor acquires the ownership of the property he possesses by the continuance of his possession during the time fixed by law. La.Civil Code art. 3457-58.
Wellman's exception is peremptory because its function in asserting acquisitive prescription is to have the plaintiff's action declared nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action. La.Code Civ.Pro. art. 923. As such the peremptory exception may properly raise the plea of acquisitive prescription. La.Code Civ.Pro. art. 927; Montgomery v. Breaux, 297 So.2d 185 (La. 1974).
A question has been raised by the Court of Appeal opinion pertaining to the state of this record. When the appeal was taken to the Court of Appeal from the judgment of the trial court, counsel for Burton filed a designation setting forth those portions of the trial court record which were to constitute the record on appeal. La.Code Civ.Pro. art. 2128. This designation referred to the petition, interrogatories and answers thereto, the judgment, reasons for judgment, motion and order of appeal and the exhibits. Wellman made no designation. The transcript of testimony, therefore, is not included in the record. However, the trial judge has favored the record with a detailed and lengthy statement of facts which are sufficient for the determination of the issue presented. At the trial of the exception Burton offered no witnesses to refute the testimony of Wellman's witnesses.
As the property descriptions indicate, Wellman's property lies east of and contiguous to the Burton property. The "ideal" boundary between the two tracts is, therefore, the east line of the northwest quarter of the northwest quarter of section 20, or the west line of the northeast quarter of the northwest quarter of section 20, as shown by official government surveys.
According to Wellman's witness Otis Carruth, he once owned the land now owned by Wellman. He and his father, J. O. Carruth, bought a forty-acre tract in the elder Carruth's name from Gulf Lumber Company when Otis was just a boy. At the time it was cut-over timber land. Later, on or about January 3, 1933, the Carruths divided the property, and Otis received the north half of the northeast quarter of the northwest quarter of section 20. He immediately enclosed the property he received by constructing a fence on all sides. At the same time he built a house on the property, where he lived until 1945. Until he sold the property to W. C. Jeter in July 1945, he farmed the entire acreage, planting and cultivating cotton, corn, peanuts and like products.
Carruth testified the tract was entirely fenced to keep cattle out of his field as most cattle roamed at large in that area. The fence was constructed of split pine and net wire. In connection with the building of the fence, Carruth hired Charlie Smith, who did surveying in the area, to set the corners of his property and mark them with stobs. He built his fences accordingly. Carruth had visited the property two weeks before the trial and found the fence to be in the same position it was in when he built it in 1933. On his visits to the neighborhood from time to time since he sold the property he had occasion to see the fence, and, during this time, it remained substantially as he built it.
Carruth testified that no one disputed his western boundary and that he cleared the property to the boundaries and maintained the fence during the time he was there.
Annie Lee Jeter testified that she and her husband bought the property from Otis Carruth in 1945, where they lived until the property was sold to Wellman in 1951. The property was fenced when the Jeters acquired, it, and they maintained the fencing and farmed the property within three feet of the fence until it was sold to Wellman. Since then, she had seen the property occasionally and the fences were still in the same places, as before. No changes were *999 made by the Jeters in the fence lines and the lines were never questioned by others.
Ike Morrison lived in this area since 1934 and knew the Jeters from 1938. In driving a school bus from 1938 to sometime in the mid-sixties he passed the property twice a day on school days; he stated the fences have always been in the same place. Three other witnesses confirmed these facts.
Wellman testified that he has owned the property since 1951 and has maintained the site as a home for 23 years or more, having rebuilt the Carruth house during that time. He viewed the property before he made the purchase, saw the fences surrounding it and has maintained those fences since, in basically the same condition and in the same position. The fences have remained intact. No challenge to his fence line was made until this suit was brought. He has also cultivated the property within the fence lines and knew it to be cultivated by Carruth and Jeter before he bought it. Wellman's wife corroborated his testimony. Deeds to establish transfers of title from Carruth to Jeter and from Jeter to Wellman are part of the record.
The evidence establishes without contradiction that a visible boundary between the Burton and Wellman property, evidenced by a fence, has existed without interruption and was maintained by the successive owners for more than thirty years. The case is therefore governed by Article 852 of the Civil Code:
"Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one cannot prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession."
Possession to a physical boundary for thirty years, like the acquisitive possession of thirty years established by Article 3475 of the Civil Code, entitles the possessor to the ownership of the property possessed. An obvious public interest requires that boundaries established for more than thirty years should not be disturbed, and the law so provides.
The question is resolved by this Court's holding in Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957) where this lucid statement of the law is found:
"[W]here there is a visible boundary which has been in existence for thirty years or more and the defendant in a boundary action and his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years should be sustained. It is our view that for the rule to be applicable two conditions must concur: First, there must be a visible boundary, artificial or otherwise; second, there must be actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the title and embraced within the visible bounds."
When these conditions are fulfilled, as they are in the case at bar, the absence or failure of consent on the part of the contiguous owner cannot affect the rights that have accrued by operation of law to the possessor under the thirty-year prescriptive plea.
Although the judgment rendered by the trial court attempted to describe with particularity the location of the disputed boundary, there is no reliable evidence in the record on which an accurate description can be based because no surveyor has been appointed and no survey or proces verbal thereof has been made. This Court, therefore, can only affirm the factual findings of the trial judge. Thus the boundary has not been judicially "fixed" as the action in *1000 boundary requires under the circumstances. In the absence of agreement between the parties, that must be done by a sworn surveyor of this State, who shall be bound to make a proces verbal of his work in the presence of two witnesses. La.Civil Code arts. 833-39.
While the appointment of the surveyor should properly precede the production of evidence to resolve the differences between the contiguous owners, in this case that was not done. But this does not mean that the evidence taken on the plea of prescription and the judgment rendered there is to no avail. All that remains to be done to judicially fix the boundary is to have a surveyor appointed by the trial judge to survey the ideal boundary between these owners and to show the relation of the fence to that boundary. Thereafter, the trial judge will render a judgment, based on that survey giving a particular description by measurements relating the fence line as the true boundary to the ideal boundary and making reference to the plat of survey, all to be filed of record in the office of the Clerk and Recorder for the Parish of Vernon. Bollin v. Stafford, 297 So.2d 711 (La.App.1974); Johnson v. Horton, 262 So.2d 158 (La.App. 1972); Robertson v. Morgan, 116 So.2d 141 (La.App.1959).
A survey should be made despite the fact that the issue of possession of the property within the fence line for thirty years has been satisfactorily established in Wellman's favor. Such a result is dictated by the Code when it declares that an action of boundary cannot be prescribed against. La.Civil Code arts. 824-25; La.Code Civil Pro. art. 3691. And a survey is made a necessary part of an action in boundary. La.Civil Code arts. 833-39; La.Code Civil Pro. art. 3692. It is a method the law prescribed to bring certainty to the resolution of the question and set the boundary at rest among neighbors. The survey serves moreover to preserve record evidence of the boundary by confirming the location of the fence line.
From this record and considering the circumstance of Wellman's long undisturbed and uninterrupted possession, together with Burton's obviously erroneous contention that Wellman wrongfully claimed that the fence was the proper boundary, Wellman should not be taxed with the costs of these proceedings or the survey to be made in connection therewith. There was in fact no justifiable dispute between the parties, as Burton's failure to present evidence illustrates. La.Code Civil Pro. art 2164; Derouen v. Poirier, 136 So.2d 131 (La.App. 1962). In these circumstances, Article 663 of the Civil Code requiring that fixing of the boundary be at the joint expense of the parties does not apply. Savoie v. Savoy, 262 So.2d 582 (La.App.1972); Brashears v. Hood, 137 So.2d 88 (La.App. 1962).
For these reasons assigned, the case is remanded to the trial court to be proceeded with in accordance herewith.
NOTES
[*] MARCUS, J., was of the opinion that a rehearing should be granted.