373 So.2d 220 (1979)
Emelia M. FRUGE et al., Plaintiffs-Appellants,
v.
Lovina S. LYONS et al., Defendants-Appellees.
No. 7046.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1979.
*221 Ryder & Deshotels, Alfred Ray Ryder, Oberlin, for plaintiffs-appellants.
Jerry J. Johnson, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
STOKER, Judge.
This is a petitory action. The action was commenced as a petition for injunction to prevent defendants from re-erecting a fence which plaintiffs had torn down. The fence is claimed by defendants to be the boundary line between plaintiffs' and defendants' respective parcels of land which adjoin one another. As a result of numerous pleadings filed by both sides the action ultimately became a petitory action, particularly through a specific supplemental and amending petition to that effect filed by plaintiffs. (Tr. 48-50) When the case came to trial, it was agreed that the action was a petitory action. (Tr. 183-184) At oral argument it was also agreed that the action was a petitory action. The trial court found for the defendants and decreed them to be the owners of a specifically described parcel of land measuring 557.66 feet on its north and south sides by fourteen feet on its east side and 20.66 feet on its west side. The land is located in Allen Parish.[1] We affirm.
It is clear that the case before the court is a petitory action. However, certain principles of law relating to the boundary action have been raised and argued, principally as they relate to prescription. As a defense to the petitory action, defendants admit they rely entirely on prescription. Initially, they relied on the prescription of ten years provided by LSA-C.C. art. 853 and 30 years as provided by LSA-C.C. art. 852. (Tr. 32) By subsequent amendment defendants also claim the strip of land in question through acquisitive prescription of ten and twenty years under LSA-C.C. art. 853, by thirty years under LSA-C.C. art. 852 and/or thirty years under LSA-C.C. art. 794 as amended by Act 169 of the 1977 Session of the Louisiana Legislature. (Tr. 54-56)
At the time trial on the merits began there was in effect a preliminary injunction [2] prohibiting defendants from rebuilding *222 the fence removed by plaintiffs. A temporary restraining order to that effect was issued on August 18, 1975, in response to plaintiffs original petition. Defendants filed a rule (Tr. 11) to dissolve the temporary restraining order and for damages and attorney's fees for services rendered in connection with the seeking of the dissolution. In their answer and reconventional demand (Tr. 28-34) defendants seek damages for mental anguish, humiliation and embarrassment. Further, defendants seek a court order requiring defendants-in-reconvention (Emelia M. Fruge, et al.) to rebuild the fence or alternatively, to award damages for the cost of reconstruction of the fence.
FACTS
The trial judge gave no specific findings of fact in his reasons for judgment. His conclusions are confined to the following paragraph consisting of two sentences:
The Court is convinced that the defendants have acquired by 10 and 30 years prescription the property in question. This was amply proven by the evidence introduced at the trial, including the position of the fence torn down on July 4, 1975, and the length of time it had been in existence.
Inasmuch as defendants admitted they were unable to present evidence of title to the disputed strip and rely solely on prescription, the trial court did not pass on the merits of plaintiffs' title. We affirm the trial court. Therefore, we do not pass on the merits of plaintiffs' title per se.
The plaintiffs are Emelia M. Fruge, widow of Jefferson D. Fruge, and the latter's heirs George Edward Fruge, William J. Fruge and John M. Fruge. Plaintiffs will be referred to simply as the Fruges. The defendants are Lovina S. Lyons, Esther L. Myers and Molly L. Garnette. The defendants, who are also reconvenors, will be referred to simply as the Lyons. The latter two are married daughters of Lovina S. Lyons and Dock Lyons. The latter is deceased.
Accompanying this opinion is a sketch showing the layout and relationship of the two properties in question. The two tracts are contiguous and both front on the east on Green Oak Road which runs along the east side of Section 14, Township 6 South, Range 5, West, Louisiana Meridian. According to their titles the Lyons' property lies north of the Fruges' property, and the line separating them is a line running almost due east (South 89° 05' East as shown on the sketch) running from the Southeast corner of the Northeast Quarter of the Northeast Quarter of Section 14. (See plaintiffs' Exhibit, P-2.) There is no dispute about this insofar as record titles are concerned, or a least as to the descriptions by which the parties acquired their respective properties.
Difficulties arose when a survey was made for the Fruges in May or June of 1975 by a surveyor, Robert A. Fenstermaker. The survey disclosed that the fence separating plaintiffs' and defendants' properties ran south of the survey line. As shown on the sketch, the fence began at a point fourteen feet south of the front (east) corner and ran to a point 20.8 feet south of the survey line at the southwest corner of the Lyons tract and 11.5 south of the survey line at the southwest corner of another tract of land known as the Myers tract. (The Lyons tract is a two-acre tract acquired from the Myers lying in the southeast corner of the Myers tract. The Lyons tract measures 557.66 feet along the Fruge tract. The Myers tract then borders on the Fruge tract for another 536.6 feet. (See Plaintiffs' Exhibit, P-2.)
Dock and defendant Lovina Savant Lyons acquired the two-acre tract from George and Calvin Myers in 1956 and 1957 (D-46, Tr. 160 and D-47, Tr. 161). In 1938, George and Calvin Myers acquired the property from Austin Langley. (D-1-A, Tr. 92) Calvin Myers testified they moved on to the *223 property in 1930, but actually bought in 1934 but did not record a deed until 1938. (Tr. 101 & 102)
When the Fenstermaker survey disclosed to the Fruges that the fence was south of the survey line marking the north boundary of what was called for in the Fruges' title, they tore the fence down without agreement or consent from the Lyons. The fence was removed on July 4, 1975. Fearing the Lyons were going to re-erect the fence exactly where it had been, the Fruges instituted this action which, as stated above, was originally for injunctive relief to prevent the Lyons from putting the fence back.
In the course of the trial on the merits numerous witnesses testified for both sides. There is no question but that on July 4, 1975, the fence was located where Mr. Fenstermaker's survey showed it to be. In fact, he had made a survey in April of 1971 of the George Myers tract for a loan agency which showed the fence in the same location. (D-1, Tr. 91) After the fence was taken down, the Lyons had Surveyor Paul N. Fontenot survey the former fence line, and his survey corroborated the Fenstermaker survey. (See P-2 and Tr. 204-212)
The sole factual question presented in this case is whether the trial court was correct in its finding that the Lyons, and their ancestors in title before them, had possessed the 557.66 foot strip sufficiently to acquire title by prescription. We take the trial judge's reasons for judgment to mean that he found that the fence line disclosed by the survey had been the location of a fence in one or more forms since at least 1935. Further, we assume he found that the Lyons and their ancestors in title had possessed the strip, which was admittedly outside of their title, during that period. The record amply supports the trial judge in these findings, and we find no merit to the claim that he committed manifest error in those findings.
HEARSAY TESTIMONY OF CALVIN MYERS
Prior to trial Calvin Myers gave a deposition. At trial the deposition, D-3, was offered on behalf of the defendants on the ground that Calvin Myers was then deceased. (Tr. 327) Plaintiffs objected on various grounds including the fact that Calvin Myers gave hearsay testimony in the deposition purporting to relate certain statements made by Jefferson Fruge in 1935. Jefferson Fruge was the husband of plaintiff Emelia Fruge and father of defendants, George Edward, William J. Fruge, and John M. Fruge. The deposition was admitted subject to the objection. In his reasons for judgment the trial court ruled that the deposition was admissible and overruled the objections of plaintiffs to the portions of the depositions representing hearsay.
Plaintiffs list as their first specification of error the admission of the hearsay testimony of Jefferson Fruge by Calvin Myers. Calvin Myers testified that Jefferson Fruge was present and assisted in putting up a fence in 1935 along the same line where it was on July 4, 1975. Myers further stated that Jefferson Fruge said at the time, "the fence was on the old Government line, and the old Government surveyed line, and he told us to go by the old fence, that it was right" and that Jefferson Fruge agreed to putting up the fence. (Tr. 106 and 107) Defendants urge that this hearsay testimony was admissible as an admission against interest and as such is legal evidence binding on the executor, administrator, heirs or other persons claiming under him. For this proposition defendants cite Larocca v. Ofrias, 231 La. 292, 91 So.2d 351 (1956) and authorities in the field of evidence.
The purport of the hearsay evidence is that Jefferson Fruge accepted the fence line in question from 1935 until his death as the boundary line of his property on the north and the bordering properties located north of the fence.
We are inclined to agree with the trial court that the hearsay in question was admissible assuming that he deemed it to be an admission or declaration against interest. However, and in any event, we view the *224 admission of the testimony as harmless error in view of the wealth of testimony establishing the existence of the fence from 1935, the absence of any evidence that the Fruges ever objected to the location of the fence, the knowledge of the Fruges that the land north of the fence was being possessed by their neighbors to the north, and the fact that our affirmance in this case is based on adverse prescription of thirty years rather than acquiescence or agreement on a boundary line. Testimony on behalf of the Fruges was that they were unaware that the true line called for in their title ran north of the fence line until the Fenstermaker survey was made in May or June of 1975.
OWNERSHIP OF THE LAND IN DISPUTE
The basic question in this case is the ownership of the narrow strip of land between the previously existing fence and the ideal boundary as surveyed which will be referred to hereafter as the "subject property". Although this case developed and, was tried and decided, as a petitory action, the law of boundary actions is applicable in certain respects. In response to plaintiffs' third supplemental and amending petition the defendants filed an answer which included the following allegations and pleadings:
Further answering the allegations of plaintiffs' Third Supplemental and Amending Petition, defendants show:

3.
Defendants expressly, affirmatively, unequivocally, and specifically plead that they have acquired the ownership of the property from the fence northward through the acquisitive prescription of ten and twenty years provided for in Article 853 of the Civil Code and thirty years as provided for in Article 852 of the Civil Code and/or the thirty years provided in Article 794 which was added by Act 169 of the 3rd Regular Session of the Legislature of 1977.

4.
Defendants and their predecessors in title have been in peaceable, public and unequivocal, corporeal possession of the property from the fence northward continuously and without interruption, and as owners, from 1935 to date. All arable portions of this property have been cultivated by defendants and their predecessors in title each year from 1935 to date. Defendants and their predecessors in title have raised vegetables, various other crops, cattle and cut timber on said land since 1935 to date.

* * * * * *
WHEREFORE, defendants pray:
I. On the main demand, rejecting plaintiffs' demand against the defendants and recognizing the defendants as the owners of the property from the fence northward and for all costs of this proceeding; and

* * * * * *
For the purpose of clarity it should be noted that Act No. 169 of the 1977 Session of the Louisiana Legislature changed the statutory or codal law of our state relating to boundary actions. The Louisiana Civil Code and the Louisiana Code of Civil Procedure were amended. It was provided in Section 7 of the Act that the new provisions should become effective on January 1, 1978. We deem it unessential that we determine whether or not the provisions apply to this case.[3]
Are codal articles of the codes pertaining to boundary actions applicable in petitory actions?
*225 An issue in this case is whether boundary action codal articles apply to petitory actions. LSA-C.C. arts. 852 and 853 are boundary action provisions relating to prescription. Article 852 has been replaced in the 1977 Act by Articles 794 and 796. Articles 853 has been suppressed.[4] (As shall be later explained, our decision in this case will not be based on Article 853, even if it should otherwise be applicable to this case.)
We regard it as now well settled that title prescriptions may be pled in boundary actions, and boundary prescriptions may be pled in title suits. Ledoux v. Waterbury, 292 So.2d 485 (La.1974). It is significant that in so holding the Louisiana Supreme Court cited two cases from this court both of which involved pleading boundary action articles in petitory actions. Abramson v. Piazza, 198 So.2d 565 (La.App. 3rd Cir. 1967), on rehearing, and Stanford v. Robertson, 144 So.2d 747 (La.App. 3rd Cir. 1962). In the latter case, speaking through Judge Tate (now Justice Tate), this court said in that petitory action:
The defendants pleaded several prescriptions in bar of the plaintiff Stanford's claim to property possessed by them north of the fence line. Most pertinently to this discussion, included among those pleaded is what the defendants describe as the pleas of thirty years' acquisitive prescription provided both by LSA-C.C. art. 852 and by LSA-C.C. Art. 3499. See Tr. 28, 32 and 35. (Despite suggestions to the contrary in the earlier jurisprudence, it is now well settled that the boundary prescription provided by LSA-C.C. Art. 852 may be pleaded not only in boundary actions, but also in petitory actions. See Nelken v. Aldredge, La.App., 3 Cir., 128 So.2d 843, and cases cited therein. See also: Mills v. Butler, La. App., 1 Cir., 131 So.2d 262, and 22 La.L. Rev. 727, 741-742, 1962.)
It has already been noted that Article 852 is a boundary action provision now embodied in Articles 794 and 796, and according to paragraph (a) in the Reporters Comment thereunder, does not change the law. Louisiana Civil Code article 3499 is not a boundary action provision but is a general provision providing for acquisitive prescription through possession for thirty years without any need of title or good faith in the possession. Old Article 852 and new Articles 794 and 796 provide for the same result in the context of boundary actions.
Hence, defendants may legally rely on old Article 852 or new Articles 794 and 796 to the extent that they may otherwise be applicable under considerations of retroactivity or inapplicability of Act 169 of the 1977 Session of the Louisiana Legislature.
Applicability of the "old" and "new" boundary action articles.
In our view it is not necessary to a decision in this case to determine if the new or old boundary articles apply here. As noted, no change in the law was intended. Therefore, Articles 794 and 796 merely clarify Article 852. The language of these articles is set forth below.
The "old" article reads as follows:
Art. 852. Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession.
The "new" articles read as follows:
Article 794. Determination of ownership according to prescription
*226 When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.
Article 796. Error in the location of markers; rectification
When visible markers have been erroneously placed by one of the contiguous owners alone, or not in accordance with a written agreement fixing the boundary, the error may be rectified by the court unless a contiguous owner has acquired ownership up to the visible bounds by thirty years possession.
Applicability of "Old" Civil Code Article 853.
Assuming that defendants and reconvenors retained any rights under former Article 853 of the Louisiana Civil Code, which were suppressed in the 1977 amendments, we do not find it necessary to consider those rights here. We decide the case entirely on prescription of thirty years. Article 853 provided for an adverse possession of ten and twenty years and to some extent was based upon acquiescence in a fixed or visible boundary.[5] Inasmuch as we do not base our decision on Article 853, the objections of plaintiffs and defendants-in-reconvention to hearsay testimony of Jefferson Fruge given by Calvin Myers and others purporting to show acquiescence or agreement on the fence line as the boundary line are not significant.
May Defendants and Reconvenors rely on prescription of thirty years through "tacking" possession?
As earlier noted we affirm the trial court's finding that defendants and reconvenors proved they owned the subject property through thirty years prescription. They made the required showing of unequivocal, continuous, and uninterrupted public and adverse possession, through themselves and their ancestors in title, for thirty years by a preponderance of the evidence.
The issue raised in this regard is: May the Lyons apply the principle of "tacking" under the circumstances in view of the fact that the subject property lies outside or beyond the description contained in their title?
Preliminarily and before addressing ourselves to this question we quote the following pertinent pronouncement of the Supreme Court in William T. Burton Industries, Inc. v. Wellman, 343 So.2d 996 (La. 1977), a case which applied old Civil Code article 852:
Possession to a physical boundary for thirty years, like the acquisitive possession of thirty years established by Article 3475 of the Civil Code, entitles the possessor to the ownership of the property possessed.[6] An obvious public interest requires that boundaries established for more than thirty years should not be disturbed, and the law so provides.
The question is resolved by this Court's holding in Sessum v. Hemperley, 233 La.

*227 444, 96 So.2d 832 (1957) where this lucid statement of the law is found:
"[W]here there is a visible boundary which has been in existence for thirty years or more and the defendant in a boundary action and his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years should be sustained. It is our view that for the rule to be applicable two conditions must concur: First, there must be a visible boundary, artificial or otherwise; second, there must be actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the title and embraced within the visible bounds."
When these conditions are fulfilled, as they are in the case at bar, the absence or failure of consent on the part of the contiguous owner cannot affect the rights that have accrued by operation of law to the possessor under the thirty-year prescriptive plea.
See also Gelpi v. Shall, 355 So.2d 1014 (La.App. 4th Cir. 1978) and Leblanc v. Laborde, 368 So.2d 1126 (La.App. 3rd Cir. 1979).
In reverting to the question of tacking, we find that this court has previously resolved the question posed. In Stanford v. Robertson, supra, Justice Tate continued, following the quotation given above, as follows:
Much of counsel's argument is devoted to the discussion of whether or not the defendants obtained prescriptive title by thirty years adverse possession under the latter article, 3499; but, since we find the evidence clearly supports a holding that the defendants obtained prescriptive title under the former article, 852, we will pretermit discussion of the substantial contentions made by the opposing parties as to whether or not some or all of the defendants did or did not obtain title under Civil Code Article 3499.
Civil Code Article 852 provides for the obtaining of ownership by prescription to land beyond that to which the possessor has record title, by thirty years' uninterrupted possession up to a visible boundary. Sessum v. Hemperley, 233 La. 444, 96 So.2d 832, noted at 18 La.L.Rev. 742 (1958) and 32 Tul.L.Rev. 324 (1958); Chaney, Prescription under Article 852, 13 La.L.Rev. 582 (1953). Civil Code Article 3499 provides for obtaining a prescriptive title by thirty years' adverse possession "as owner." Some of the differences between obtaining prescriptive title by thirty years' possession under Civil Code Article 852, as compared with obtaining it under Civil Code Article 3499, are discussed in the classic decision of Opdenwyer v. Brown, 155 La. 617, 99 So. 482, as well as recently by this court in Baudin v. Charrier, La.App., 137 So.2d 440.
One of the chief differences concerns the circumstances under which the present possessor pleading the prescription in question can tack on the possession of his authors in title, in order to make up the requisite thirty years of adverse possession.
Under LSA-C.C. art. 3499, the possession of the predecessors in title cannot be added to that of the present possessor, unless the title of the present possessor includes the property in dispute, else there is no privity of estate such as is necessary to make up the thirty years adverse possession "as owner". Stutson v. McGee, 241 La. 646, 130 So.2d 403; Comment, "Tacking of Possession for Acquisitive Prescription", 8 La.L.Rev. 105 (1947). On the other hand, under LSA-C.C. Art. 852, the tacking of successive possessions up to the established visible bound between two estates is permitted, whether or not the land in dispute is *228 included within the title description of the party pleading prescriptive title under this article. Opdenwyer v. Brown, 155 La. 617, 99 So. 482; Mills v. Butler, La.App., 1 Cir., 131 So.2d 262; Henly v. Kask, La.App.Orl., 11 So.2d 230. See also Chaney, Prescription under Article 852, 13 La.L.Rev. 582 (1953), and Baudin v. Charrier, La.App., 3 Cir., 137 So.2d 440.
This holding was again followed in a petitory action considered by this court in Dubois v. Richard, 223 So.2d 198 (La.App. 3rd Cir. 1969). This position regarding tacking was recently affirmed by this court in a boundary action applying new Article 794 of the Civil Code. Leblanc v. Laborde, supra.
Hence, we arrive at the conclusion that under either old Civil Code Article 852 or new Civil Code Article 794, a possessor without good faith may tack on to his own possession that of his ancestors in title in order to make up the required thirty years adverse possession. Therefore, the Lyons, defendants and reconvenors, may tack on to their own possession of the subject property that of the Myers and previous ancestors in title. The possession was exercised up to a visible boundary, the fence which existed over the period from 1935 at least until July 4, 1975. Under the principles of law above discussed the Lyons had become owners of the subject property when plaintiffs tore it down on July 4, 1975.
The judgment rendered and signed by the trial court rejected plaintiffs' claims on the main demand. It gave judgment in favor of the Lyons as plaintiffs-in-reconvention against the Fruges declaring the Lyons to be the owners of the subject property which is specifically described in the judgment as set forth in footnote 1 of this opinion. Because this was a petitory action, and because the description is adequate for the location of the property and the fence line boundary, we do not deem that a remand of this case is required by William T. Burton Industries, Inc. v. Wellman, supra, for the purpose of judicially fixing the boundary. In Gelpi v. Shall, supra, a boundary action, the court held it unnecessary to order a survey to judicially fix the boundary because "the trial court was able in its judgment to delineate with particularity the boundary of defendant's property." However, in the event there should be any doubt at this point, or difficulty over it in the future, we reserve the right to both parties to request an order from the trial court to fix the boundary as prescribed by law and as discussed in the William T. Burton Industries case.
OTHER SPECIFICATIONS OF ERROR
The foregoing portions of this opinion have covered all of appellants' specifications of error with the exception of specification number two. In appellant's brief, error number two is set forth as follows: "In ruling that the fence which was removed by plaintiffs was intended to be boundary between the properties of the parties in question." We do not deem it necessary to specifically address this alleged error inasmuch as we have pretermitted this question and have grounded our affirmance on adverse prescription of thirty years above.
CONCLUDING MATTERS
In addition to rejecting plaintiffs' demands and granting judgment to plaintiffs-in-reconvention declaring them to be owners of the subject property, the judgment granted plaintiffs-in-reconvention other forms of relief which had been prayed for, fixed the expert witness fees and assessed plaintiffs with all costs of court. As these awards and dispositions have not been challenged in brief or oral argument, they are not at issue and will be affirmed.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiffs and defendants-in-reconventionappellants.
AFFIRMED.
*229 
NOTES
[1] The actual description contained in the judgment is as follows:

Commencing at the Southeast Corner of the Northeast Quarter of the Northeast Quarter (SE/C of NE¼ of NE¼) of Section Fourteen (14), Township Six (6) South, Range Five (5) West, Louisiana Meridian, thence go South 14 feet; thence West a distance of approximately 557.66 feet to a point approximately 20.8 feet South of the 40 line; thence go North a distance of 20.8 feet; thence go East a distance of 557.66 feet to the point of beginning, all being in Allen Parish, Louisiana, as per plat of survey dated April, 1971 and prepared by R. A. Fenstermaker, a copy of which is attached hereto and made a part hereof.
[2] This is stated in the trial court's reasons for judgment. An extension of the temporary restraining order was signed on August 28, 1975. (Tr. 17) The rule was heard on September 4, 1975, and was referred to the merits in a judgment signed on February 3, 1975. (Tr. 43) The record contains a motion and order dated February 15, 1977, rendered September 4, 1976, which by its terms states that matter came on on a motion to dissolve a preliminary injunction. (Tr. 46) The order states that "the preliminary injunction issued herein enjoining and prohibiting Defendants from erecting a fence on the property described in plaintiffs' original petition be continued until trial upon the merits on this matter." The record contains neither a minute entry or a judgment or order of court granting a preliminary injunction.
[3] Section 8 of the Act reads as follows:

"Section 8. The provisions of this Act shall apply to all boundary matters arising under the Civil Code of Louisiana, including those existing on the effective date of this Act; but no provision may be applied to divest already vested rights or to impair the obligation of contracts."
The initial pleading of plaintiffs for injunctive relief was filed on August 18, 1975. The case was heard on its merits on December 8, 1977 and April 12 and 13, 1978.
[4] See Reporters Comment (a) under new Article 795. (LSA-C.C. art. 795)
[5] See Reporters Comment (e) under new Article 795. (LSA-C.C. art. 795)
[6] LSA-C.C. art. 3475 and 3499 are to the same effect. Article 3475 reads as follows:

Art. 3475. Immovables are prescribed for by thirty years without any title on the part of the possessor, or whether he be in good faith or not.
Article 3499 reads as follows:
Art. 3499. The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith.