GUIDRY, Judge.
This is a petitory action instituted by Morrison Grain Company, Inc., Morrison Quirk Grain Corporation, L. W. Wickes Agent Company, a California partnership composed of Seymour Bond and Edward G. Bernstein, L. W. Wickes Agent Corporation, Benedict Corporation and Missiana, Ltd., a California limited partnership composed of the partners Guy P. Allison and Pauline J. Hakelberg, all hereinafter collectively referred to as Morrison, against Artellis Char-rier.[1]
In its petition, Morrison alleges that it is the true and lawful owner of 80 acres of land in Catahoula Parish, Louisiana, described as North Half (N/2) of Southwest Quarter (SW/4) Section 17, Township 4 North, Range 6 East. Morrison further alleged that Artellis Charrier was in possession of a portion of such property without any title whatsoever. Defendants answer *1204 ed plaintiff’s petition admitting their possession of property located in the North Half (N/2) of Southwest Quarter (SW/4) Section 17, T. 4 N., R. 6 E. and their refusal to deliver possession of such property to plaintiff alleging that such property constitutes a portion of their residence lot acquired by an act of sale dated May 5, 1967. Defendants further alleged that the property acquired by Artellis Charrier in the year 1967 was at the time of acquisition bounded on the south by a fence which had been constructed on the south boundary of such property and maintained as a boundary line for a period of time in excess of 30 years. Defendants alleged acquisition of that portion of their residence lot located in North Half (N/2) of Southwest Quarter (SW/4) Section 17, T. 4 N., R. 6 E. by the acquisitive prescription of 10 and 30 years and by the prescription of 30 years provided by C.C. Article 794, formerly C.C. Article 852.
The record reflects that Morrison is record title owner of North Half (N/2) of Southwest Quarter (SW/4) Section 17, T. 4 N., R. 6 E. Defendants’ ancestor, Artellis Charrier, acquired by an act of sale dated May 5, 1967 a one-half acre tract lying and being situated in the Southwest Quarter (SW/4) of Northwest Quarter (NW/4) of Section 17, T. 4 N., R. 6 E. particularly described as follows:
“Begin at the point where the south boundary line of the Southwest Quarter (SW/4) of Northwest Quarter (NW/4) of Section 17 intersects the western right of way line of the parish gravel road, thence from said point run northerly along the western right of way line of said parish gravel road a distance of 1.65 chains to a point; thence run westerly a distance of 3.0 chains to a point; thence run southerly a distance of 2.6 chains to the south line of Southwest Quarter (SW/4) of Northwest Quarter (NW/4) of Section 17; thence run east along the south line of said Southwest Quarter (SW/4) of Northwest Quarter (NW/4) a distance of 2.0 chains to the point of beginning.”
The properties belonging respectively to Morrison and the defendants adjoin, the south line of defendants’ residential lot, according to the record title, coinciding with the north line of Morrison’s property. According to the record, a fence allegedly marking the south boundary of the defendants’ residential lot, encroached over into the North Half (N/2) of Southwest Quarter (SW/4) Section 17, T. 4 N., R. 6 E. so as to include, within the enclosure of defendants’ residential property, a strip out of North Half (N/2) of Southwest Quarter (SW/4) Section 17, T. 4 N., R. 6 E. containing approximately .28 acres. This is the property in dispute. Defendants do not dispute that plaintiffs have record title to this .28 acre strip but allege that they have acquired title thereto by virtue of the acquisitive prescriptions of 10 and 30 years and/or by the boundary prescription provided for by C.C. Article 794, formerly Article 852.[2]
The record reflects that when Artellis Charrier acquired the residential lot above referred to from Lee Crooks a fence existed along the north, south and west lines of the property. The Charrier lot fronts along a parish gravel road which runs along its eastern boundary.
The several witnesses who testified, stated that the fence along the south boundary of Charrier’s residential lot was in existence as early as the year 1932 and was continuously maintained in the same place by the several owners of the Charrier lot until such fence was removed by Artellis Charrier sometime during the year 1978. Mrs. Char-rier testified that her deceased husband removed the south fence sometime during the year 1978 because the fence line had become overgrown with brush and weeds and served as a nesting place for snakes. Mrs. Charrier testified further that following the removal of the fence, remnants thereof remained and the property was mowed and *1205 maintained up to the point of the old fence line.[3]
There is absolutely nothing in the record to contradict the testimony of the several witnesses who testified as to the existence of the fence, its location and the period of time during which it was maintained in the same location.
The trial court rendered judgment in favor of the defendants, concluding that a fence along the south line of defendants’ property was in existence as a recognized boundary for a period in excess of 30 years and that they and their ancestors in title had possessed such portion of North Half (N/2) of Southwest Quarter (SW/4) Section 17, T. 4 N., R. 6 E. lying north of such fence line during such period continuously and without interruption. Pursuant to this conclusion, the trial court, without benefit of survey, rendered judgment in favor of defendants recognizing defendants as the owners of a strip of land particularly described in the trial court’s judgment as follows:
“A .28 acre tract located in the NW/4 of the SW/4 of Section 17, T4NR6E, Cata-houla Parish, Louisiana, said tract being a strip of land immediately adjacent to and on the south side of a tract of land conveyed to Artellis Charrier by Lee Crooks, by deed dated May 5, 1967, recorded at Conveyance Book 79, Page 664, of the records of the Clerk of Court of Catahou-la Parish, Louisiana and more particularly described as follows, to-wit:
Beginning at the point where the south boundary line of the SW/4 of the NW/4 of Section 17, T4NR6E, Catahoula Parish, Louisiana, intersects with the west right-of-way line of the Parish Gravel Road, said Parish Gravel Road forming the east boundary of the tract conveyed to Artel-lis Charrier by Lee Crooks; thence from said point run southerly along the western right-of-way line of said Parish Gravel Road to a point where a previously existing fence line intersects therewith (as more fully shown by Defendants’ photograph exhibit No. 5 in the record of these proceedings); thence run in a westerly direction along said fence line to a point where said fence line intersects with an extension of a fence forming the west boundary of said tract conveyed to Artellis Charrier by Lee Crooks; thence run northerly along an extension of said west fence line, to a point where the south boundary line of the SW/4 of the NW/4 of Section 17, T4NR6E, intersects therewith; thence run in a easterly direction along said south boundary line to the Parish Gravel Road or the POINT OF BEGINNING.”
Plaintiff appeals. We affirm.
On appeal plaintiff does not question the trial court’s conclusion that a fence did exist delineating the southern limits of the residential lot acquired by Artellis Charrier from Lee Crooks; that such fence was maintained in existence in the same place for a period in excess of 30 years; and, that defendants and their ancestors in title possessed up to such fence line continuously and without interruption. Appellants urge that, conceding correctness of these findings, the trial court erred in awarding judgment in favor of defendants because (1) defendants failed, at the time of trial, to specifically identify by survey the immovable property which they claimed by prescription, and (2) defendants failed to establish that their property and that of plaintiff were contiguous. In the alternative, appellant specifies as error the failure of the trial court to appoint a surveyor to delineate by an accurate survey the location of the line established as the boundary between plaintiff’s property and defendants’ residential lot.
LSA-C.C. Article 794 provides as follows:
*1206 “When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.”
It is well settled that title prescriptions may be pled in boundary actions and boundary prescriptions may be pled in title suits. Ledoux v. Waterberry, 292 So.2d 485 (La.1974); Fruge v. Lyons, 373 So.2d 220 (La.App. 3rd Cir. 1979). Also well settled is the legal principle that under LSA-C.C. Article 794, formerly Article 852, a possessor without good faith may tack on to his own possession that of his ancestors in title in order to make up the required 30 year adverse possession. Fruge v. Lyons, supra, and cases therein cited.
Our examination of the record reveals the trial court’s factual conclusions to be eminently correct. Evidence as to the existence of a fence along the south side of defendants’ residential lot for the period extending from at least the year 1932 to the year 1978 is unrefuted. Equally clear is the fact that when the fence was removed by Artellis Charrier in the year 1978 that remnants of the old fence remained, visibly delineating the location of the former fence line. Further, the record leaves no doubt but that defendants and their ancestors in title possessed continuously and without interruption during such entire period that portion of North Half (N/2) of Southwest Quarter (SW/4) Section 17, T. 4 N., R. 6 E. located north of such fence line. Considering these established facts, in light of the aforementioned legal principles, the trial court was correct in recognizing such fence line as the boundary between the contiguous properties owned or claimed by the parties and as recognizing defendants as owners of that portion of North Half (N/2) of Southwest Quarter (SW/4) Section 17, T. 4 N., R. 6 E. located north of such line.
We find no merit whatever in plaintiff’s specifications of error as to defendants’ failure to identify by survey the immovable property which they claim by the running of prescription or as to defendants alleged failure to prove that the lands are contiguous. The pleadings and the evidence clearly show that the properties owned by Morrison and defendants are contiguous, and the evidence in the record is clearly sufficient to identify the immovable property which ap-pellees claimed by the running of acquisitive prescription. The fact that such property can be identified is clearly shown by the fact that the learned trial judge in framing his judgment did so by reference to the road which bounds the property on the east and the remnants of the old fence.
Although we find that the property possessed by defendants adverse to plaintiff can be located and adequately identified from the evidence presented, we do believe that there is merit to appellant’s alternative contention. As stated in William T. Burton Industries, Inc. v. Wellman, 343 So.2d 996 (La.1977):
“A survey should be made despite the fact that the issue of possession of the property within the fence line for thirty years has been satisfactorily established in Wellman’s favor. Such a result is dictated by the Code when it declares that an action of boundary cannot be prescribed against. La.Civil Code arts. 824-25; La.Code Civil Pro. art. 3691. And a survey is made a necessary part of an action in boundary. La.Civil Code arts. 833-39; La.Code Civil Pro. art. 3692. It is a method the law prescribed to bring certainty to the resolution of the question and set the boundary at rest among neighbors. The survey serves moreover to preserve record evidence of the boundary by confirming the location of the fence line.”
Although statutory changes have occurred with regard to the action in boundary since rendition of the decision in Burton, particularly the change in LSA-C.C.P. Article 3692, which now leaves the appointment of a surveyor to the discretion of the court, and the elimination of formalities of survey formerly required by C.C. Articles 834 through 837, where, as in this case, a survey *1207 has not been made the trial court should order a survey in order to preserve the record evidence of the boundary by confirming the location of the fence line. William T. Burton Industries, Inc. v. Wellman, supra; Copellar v. Yount, 344 So.2d 1114, 1116 (La.App. 3rd Cir. 1977); Young v. Morvant, 358 So.2d 1292, 1301 (La.App. 3rd Cir. 1978); LeBlanc v. Laborde, 368 So.2d 1126, 1129 (La.App. 3rd Cir. 1979).
Accordingly, although we affirm the judgment of the trial court, this matter will be remanded for the purpose of having a court appointed surveyor, in accordance with recognized and proper surveying techniques, ascertain and locate the common boundary between the properties of plaintiff and defendants as said boundary is established by the judgment herein rendered. We further hold that, considering the totality of circumstances present in this case, plaintiff should be taxed with all costs at the trial level and on appeal, including the survey to be made pursuant to this judgment.
For the reasons assigned, the judgment of the trial court is affirmed, however, this matter is remanded to the trial court for further proceedings as outlined above. All costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED AND REMANDED.

. Artellis Charrier was originally made a party defendant in this proceeding, however, two days following institution of suit Artellis Char-rier died and his widow and heirs were substituted as parties defendant,

. Defendants, at the time of trial, abandoned any claim of ownership to the disputed area based upon the acquisitive prescriptions of 10 and 30 years, as provided for by C.C. Articles 3478 and 3499.

. Defendants introduced as their exhibit 5 a photograph of the Charrier lot which shows an old post. According to the several witnesses who testified, this post marks the location of the fence which formerly existed along the south boundary of the Charrier lot. As reflected above the trial judge makes reference to this exhibit 5 in his description of the property recognized to belong to the defendant.