SEXTON, Judge.
Plaintiff filed suit seeking to have the boundary between his property and that of defendant judicially fixed according to plaintiff’s title. The trial court granted judgment in defendant’s favor, fixing the boundary between the parties’ property in accordance with the boundary agreement entered into by the parties’ ancestors in title. We affirm.
Plaintiff in this cause is Ervin K. Odom, Sr., who owns property along the east *317 shore of the Toledo Bend Reservoir in De-Soto Parish. The defendant is Robert L. Elliott, who owns the property immediately to the north of Mr. Odom’s land.
The plaintiff owns a five plus acre tract along the east shore of Toledo Bend Reservoir. Defendant owns two small contiguous lots located immediately to the north of plaintiffs property. Defendant’s lots constitute part of the Pleasure Port Subdivision, and border directly on plaintiff’s property. Plaintiff’s and defendant’s properties thus share a common border, this common border forming the northern boundary of plaintiff’s property and the southern boundary of defendant’s property. The relative geographical location of the parties’ tracts may be graphically represented as follows:
[[Image here]]
Plaintiff filed suit on August 4, 1980, essentially seeking to having the boundary between his property and that of the defendant judicially fixed in accordance with the title description contained in plaintiff’s deed. The defendant’s answer pled, among other defenses, acquisitive prescription. The parties’ claims were tried July 25, 1983. In a judgment rendered September 30, 1983, the trial court rejected plaintiff’s petition to judicially fix his northern boundary according to his title. The trial court instead rendered judgment fixing the boundary in accordance with a boundary agreement confected by both parties’ ancestors in title in 1973.
The most important factor in this case is the fence which forms the northern boundary of plaintiff’s property and the southern boundary of defendant’s property. It was along this fence line that the parties’ ancestors in title fixed the boundary between the respective properties in 1973. It was this fence line that the trial court decreed to be the boundary between the tracts of the plaintiff and the defendant. The record reveals that the fence was in place in 1927. The record reveals, moreover, that remnants of the same fence have continued in existence until the present date, with the fence currently serving as the boundary between the Pleasure Port Subdivision— which includes defendant’s property — and the plaintiff’s property.
The record shows that defendant’s property was conveyed from Tom McKay to David Boyd in 1948. David Boyd farmed the property, pastured a horse on it, and testified that a net wire fence formed the southern boundary of his property. Remnants of this same fence presently separate the property of plaintiff and defendant. The property was subsequently sold by David Boyd to his brother, Willard W. Boyd in 1955. Willard Boyd continued to farm the property, as his brother had before him. The property was sold from Willard Boyd to J.L. Nunley in 1958. Neither Willard Boyd nor J.L. Nunley, Sr. were available to testify. However, David Boyd testified that the wire fence continued to exist during the ownership of these two men. A portion of the property was sold by J.L. Nunley, Sr., to his son, J.L. Nunley, Jr., in 1963. The property retained by J.L. Nunley, Sr. was conveyed to land developer M.L. Bussey in 1968. J.L. Nun-ley, Jr. also sold his share of the property to M.L. Bussey in 1969. Thus, both J.L. Nunley, Sr. and his son conveyed their interest in the tract, of which the wire fence forms the southern boundary, to M.L. Bus-sey. Bussey developed this tract into what is now Pleasure Port Subdivision. Mr. Bussey sold a lot out of this subdivision to the defendant, Mr. Elliott, in 1974. Mr. Bussey sold another lot in Pleasure Port Subdivision to the defendant in 1975. The defendant has performed numerous posses-sory acts on these contiguous lots, placing a trailer home there, and erecting a wooden *318 fence approximately one foot north, or just inside of the wire fence line.
In 1973, a boundary agreement was entered into between M.L. Bussey and Howard Fisher which set the boundary between their properties along the above mentioned wire fence. M.L. Bussey, as discussed above, is the ancestor in title of the defendant, Mr. Elliott. Howard Fisher is the ancestor in title of the plaintiff, Mr. Odom, having conveyed the tract to Mr. Odom in 1974.
Although the fence was substantially removed in 1974 by Mr. Elliott, portions of it remained in place. Some posts were left standing, and some wire was left nailed to trees that had served as fence posts in the fence line. Thus, although the structural integrity of the fence was substantially obliterated, it retained its viability as a visible wire boundary. It is significant in this respect that Mr. Odom unequivocally testified that he had not performed any possessory acts north of the fence line. It thus appears that the dilapidated fence line functionally served as the de facto boundary between the property of the plaintiff and defendant.
In a judicial fixing of boundaries, the court shall fix boundaries according to the ownership of the parties. LSA-C.C. Art. 792. When both parties rely on title alone, the boundary shall be fixed according to title. LSA-C.C. Art. 793. In cases where both parties rely on title, the title of both parties encompasses the same real property, and the parties trace their titles to a common author, “preference shall be given the more ancient title.” LSA-C.C. Art. 793. However, acquisitive prescription may be pled in a boundary action. Fruge v. Lyons, 373 So.2d 220 (La.App. 3d Cir.1979). Moreover, where either party proves acquisitive prescription, “the boundary shall be fixed according to limits established by prescription rather than titles.” LSA-C.C. Art. 794. Simply stated, prescriptive ownership eclipses title ownership. Where neither party proves ownership by title or acquisitive prescription, boundaries are fixed according to the parties’ possession — rather than ownership. LSA-C.C. Art. 792.
Defendant’s legal claim to the ownership of the property north of the fence line is palpably justified by any of three theories of prescription. Defendant could arguably establish his title by thirty years possession, by ten years possession with good faith and just title, or by boundary prescription. However, it is sufficient, for the purposes of this appeal, that defendant’s claims be analyzed solely in terms of thirty year prescription.
A party may acquire ownership of immovable property when he and his ancestor in title have corporeally possessed it for thirty years, or commenced corporeal possession of it and thereafter sustained civil possession thereof — the intent to possess as owner. In order to confer prescriptive title, possession must be underlied by the intent to possess as owner, and such possession must be continuous, uninterrupted, peaceable, public and unequivocal. The title conferred by acquisitive prescription extends only to that property which has actually been possessed, unless one possesses under title, in which case possession of 'part of an immovable under title is deemed to be constructive possession to the limits of title. Furthermore, thirty years acquisitive prescription confers ownership on the possessor without need of good faith or just title. LSA-C.C. Arts. 3421, 3424, 3426, 3431, 3446, 3476, 3485, 3486, 3488.
A possessor may add or tack his possession to that of his ancestors in title in order to cummulate the thirty years necessary to perfect prescriptive title. In order to tack the possession of his possessory predecessors, the possessor must establish privity of title with said predecessors. LSA-C.C. Arts. 3441, 3442. Moreover, where a party is attempting to establish thirty years acquisitive prescription — as opposed to boundary prescription — that privity of title must encompass the property to which the party claims prescriptive. Privity of title is required to tack under either boundary prescription or the general pre *319 scription articles. Under the general prescription provisions, that privity of title must encompass the land to which prescriptive title is claimed. Under the boundary prescription provisions, on the other hand, it is sufficient that the requisite privity of title encompass land adjacent to the property to which prescriptive title is claimed. This crucial distinction was articulated at length in this court’s decision in Brown v. Wood, 451 So.2d 569 (La.App. 2d Cir.1984).
It is clear, from the forestated facts and legal principles, that defendant has perfected prescriptive title to the property lots in Pleasure Port Subdivision presently occupied by him up to the wire fence which forms the southern boundary of his property. The defendant and his possesso-ry predecessors have corporeally possessed the land up to the fenceline for over a thirty year period, ranging from at least as far back as 1949 until the present. Moreover, defendant has established privity of title with his possessory predecessors, introducing an unbroken chain of title extending back until 1949. Lastly, defendant’s privity of title encompasses the land to which he claims prescriptive title: the title of the defendant and his predecessors encompasses the land in question up to the fence line. It therefore follows that the defendant has perfected prescriptive title to the land occupied by him directly to the north of the fence line. The trial court’s decision fixing the boundary at the fence line in accordance with the 1973 boundary agreement is thus correct.
Plaintiff has claimed at trial and on appeal that his deed calls place his northern border some 60 feet north of the fence line, and thus 60 feet onto the land presently occupied by the defendant. Plaintiff thus asserts that both surveys used in the ease are in error and that under such a circumstance the law requires that both the surveys should be rejected and the case remanded for an independent survey. However, since this case is decided on prescriptive grounds, such is unnecessary. It is axiomatic under Louisiana’s civil law of property that ownership perfected by prescription eclipses ownership by written title, and that where acquisitive prescription is proven, boundaries must be set in accordance with the bounds of acquisitive prescription rather than with the deed calls of written title. LSA-C.C. Art. 794.
The trial court’s judgment is for the foregoing reasons affirmed at appellant’s cost.
AFFIRMED.