334 So.2d 761 (1976)
Mrs. Mary C. FIORELLO
v.
Mrs. Mamie Musso, wife of Frederick J. KNECHT.
No. 7433.
Court of Appeal of Louisiana, Fourth Circuit.
June 9, 1976.
Rehearing Denied July 29, 1976.
*763 George H. Van Geffen, New Orleans, for plaintiff-defendant in reconvention and third party plaintiff-appellee.
Friedman, Ortiz & Selenberg, Maurice B. Friedman, New Orleans, for defendant and plaintiff in reconvention-appellant.
Adloe Orr, Consulting Engineers, Inc. unrepresented third party defendant-appellee.
Before REDMANN, GULOTTA and STOULIG, JJ.
GULOTTA, Judge.
This is a boundary dispute. Plaintiff seeks to establish a boundary between property belonging to herself and contiguous property belonging to defendant, as well as the removal of a three-foot encroaching fence, allegedly located on plaintiff's property between the contiguous parcels. The encroaching fence is located between lot 9, owned by defendant, and lot 10, owned by plaintiff, as designated on a court-ordered survey by Gandolfo, Kuhn & Associates, dated August 12, 1972. From a judgment in favor of plaintiff, defendant appeals.[1] We affirm.
The chronology of acquisition of the disputed property is as follows. The square in which the property is located was originally part of a section subdivided into "groves'" belonging to the New Orleans Lakeshore Land Company as designated on a survey by C. O. Hooper, dated November 10, 1918. This section was resubdivided into squares and lots by Gilbert & Kelly, Surveyors, in May, 1926. Prior to 1954, the lots involved in this litigation were owned by a common ancestor in title, Milchiori Quartararo. In June, 1954, the common ancestor in title sold three lots to defendant, including the lot involved in the present litigation. The disputed fence was constructed in August, 1955, and according to defendant, its location and construction were supervised by Quartararo. Plaintiff acquired four lots in the square, including the lots involved in this litigation, from the succession of her deceased mother in 1963, and by sale from her father, Quartararo, in 1964. Apparently, in 1969, plaintiff constructed improvements on the ground contiguous to defendant's property, and learned, at that time, of the three-foot encroaching fence. This suit followed in November, 1971.
In peremptory exceptions of no cause of action and prescription filed in this court, defendant pleads ownership of the three feet in dispute through 10, 20 and 30-year acquisitive prescription.[2] In a supplemental and amended peremptory exception, also filed in this court, defendant reurges the 10 and 30-year acquisitive prescription and also claims that a continuous and apparent servitude of "fence" has been created. Defendant further contends that the trial judge erred when he accepted the boundary established by the 1926 Gilbert & Kelly survey and rejected the boundary fixed by the court-appointed surveyor. Finally, defendant claims that since the peremptory exceptions filed in this court are based upon prescription, LSA-C.C.P. art. 2163 requires that the exceptions be remanded for hearing in the trial court.
*764 Disposing of defendant's contentions in inverse order, we find no merit in the assertion that the exception based on acquisitive prescription filed in this court should be remanded for hearing in the trial court. LSA-C.C.P. art 2163, in pertinent part, provides:
Art. 2163. Peremptory exception filed in appellate court; remand if prescription pleaded
"If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception." (underline ours)
It appears, from a reading of the article, that it is plaintiff's right to demand a remand. In the instant case, no such demand has been made by plaintiff. Furthermore, the article contemplates the necessity of an evidentiary hearing in connection with the prescription issue. In the instant case, no necessity exists for an evidentiary hearing on defendant's 10-year possession. It is undisputed that more than 10 years elapsed between the time that the fence was placed at its present location (1955) and the time that the suit was filed (1971). Under the circumstances, no purpose would be served in a remand. We can perceive of no prejudice to either party by disposing of the matter in this court.
We also find no merit to defendant's claim of ownership of the disputed property through 30-year acquisitive prescription. LSA-C.C. art. 3499, upon which defendant relies, states:
Art. 3499. Immovables, possession without title or good faith
"Art. 3499. The ownership of immovables is prescribed, for by thirty years without any need of title or possession in good faith."
Approximately 16 years elapsed between the date that defendant acquired ownership of the property and the date the suit was filed. However, defendant seeks to satisfy the Codal provision by tacking those years of ownership and possession of his ancestor in title. This argument is clearly without merit. Quartararo was the common ancestor in title of plaintiff and defendant, but he is not an ancestor in title of defendant as to the three feet to which defendant has no title. Quartararo remained the common owner until defendant purchased in 1954. It is apparent that the subject properties were held in common ownership within 30 years of the filing of this boundary action. Under the circumstances, defendant is unable to tack his possession to that of his ancestor in title. See Jones v. Dyer, 71 So.2d 648 (La.App. 1st Cir. 1954); Porche v. Martin, 177 So.2d 288 (La.App. 1st Cir. 1965); Babin v. Montegut Insurance Agency, Inc., 271 So.2d 642 (La.App. 1st Cir. 1972).
The most serious argument raised by defendant is ownership of the disputed property through 10-year prescription. Defendant bases her 10-year prescription argument on LSA-C.C. art. 3478 which provides:
Art. 3478. Immovables, possession in good faith with just title; accrual of prescription against incapables
"Art. 3478. He who acquires an immovable in good faith and by just title prescribes for it in ten years. This prescription shall run against interdicts, married women, absentees and all others now excepted by law; and as to minors his prescription shall accrue and apply in nineteen years from the date of the birth of said minor; provided that this prescription once it has begun to run against a party shall not be interrupted in favor of any minor heirs of said party."
*765 and LSA-C.C. art. 853:
Art. 853. Errors of surveyor; rectification, prescription
"Art. 853. If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be acquired by an adverse possession of ten years, if the parties are present, and twenty years, if absent."
Clearly, LSA-C.C. art. 3478 is not support for defendant's position. Under this article, acquisition by 10-year prescription requires not only 10 years possession, but also just title. According to James Couturie, surveyor, on March 25, 1955, Adloe Orr surveyed the lot previously purchased by defendant in 1954. The sale of the lots (including lot 9) by Quartararo to defendant, Knecht, refers to a survey by Gilbert & Kelly, dated May 18, 1926. According to Couturie, a conflict in these surveys is created because each surveyor started at a different point. Despite Couturie's testimony, both the Gilbert & Kelly survey and the Orr survey describe the lots, including lot 9, as commencing 125 feet from the corner of Hayne Boulevard and Michigan Street and measuring each 25 feet on Michigan Street. However, the Orr survey monuments place defendant's lots three feet south of the Gilbert & Kelly lines. Defendant's title does not include the disputed three feet in its description. Accordingly, defendant did not have a just title to the three feet. Under the circumstances and in view of the requirement of a just title under LSA-C.C. art. 3478, this Codal provision cannot support defendant's claim to ownership of the disputed three feet.
Nor does LSA-C.C. art. 853 support defendant's position. As pointed out hereinabove, it is not disputed that defendant possessed the property for a period of 10 years. However, we reject defendant's argument that since she has acquired by adverse possession in excess of 10 years, and since the fence is located on a boundary fixed as a result of an error in the placement of Orr survey monuments, the location of the fence cannot be changed.
As hereinabove pointed out, in the property description by which defendant, Knecht, purchased from Quartararo, the description makes reference to a survey by Gilbert & Kelly, dated May 18, 1926. Further, in the act by which plaintiff purchased from Quartararo, the description was designated in accordance with a survey made by Gilbert & Kelly, dated March 12, 1960. Therefore, the Gilbert & Kelly survey is controlling as to the location and dimensions of the properties conveyed. Monuments placed in accordance with the Orr survey are not controlling.
Furthermore, in matters involving the fixing of boundaries and surveying lands, the Louisiana Civil Code places formal requirements on surveys to be used as the basis for fixing the boundaries. Those requirements are set forth in LSA-C.C. arts. 833 et seq. Among other requirements set forth in the Codal provisions are that notice of the day and hour when the property limits will be fixed must be given by the surveyor to the interested owners. See LSA-C.C. art. 834. Also required is that a sworn proces verbal of the surveyor's work, in the presence of two witnesses, be made. See LSA-C.C. art. 833. Admittedly, the Orr survey (obtained by defendant), made nine months after defendant purchased the disputed property, was not made in accordance with the requirements of LSA-C.C. arts. 833 et seq. Since the Orr survey was not made in accordance with formalities set forth in the Code, LSA-C.C. art. 853 cannot serve as the basis for supporting defendant's claim *766 to the disputed three feet. Accordingly, we conclude that defendant's claim, based on LSA-C.C. art. 853, is without merit.[3]
Defendant, relying on LSA-C.C. arts. 727,[4] 728 [5] and 765[6], contends that she has acquired a servitude of use or servitude of "fence" on the property on which the fence is located. We disagree.
Although not clear in argument, defendant appears to assert that because the fence had been constructed in its present location for a period in excess of 10 years, defendant has acquired a servitude of "fence" over that strip of land on which the fence is located. We have been unable to find either statutory or jurisprudential authority for the establishment of a servitude of "fence". A person asserting a servitude of "fence", as in the instant case, is claiming ownership of the property enclosed by the fence, a concept different from that of a servitude of drain or passage.[7] The effect of recognizing the servitude of "fence" would be to place ownership, dominion and control of three feet of plaintiff's property with defendant. We cannot conclude that the servitude articles of the Code contemplate this result.
Finally, we find no merit to defendant's claim that the court erred in refusing to accept the survey made by the court-appointed surveyor, F. C. Gandolfo, which showed a 1.5 foot encroachment of the fence on plaintiff's property. We do not agree, as claimed by defendant, that the court is compelled to accept the survey made by the court-appointed surveyor. As was stated in Union Producing Company v. Placid Oil Company, 178 So.2d 392 (La.App. 1st Cir. 1965), writ refused, 248 La. *767 447, 179 So.2d 432 (1965), where a boundary is located is a question of fact to be determined by the trier of fact. The purpose of expert witnesses, court-appointed or otherwise, is to assist the court in making a determination of a fact or of an issue. The opinion of a court-appointed expert is not conclusive, but is evidence to be weighed as any other evidence.[8] The court is not required to accept the findings and conclusions of a court-appointed expert.
The acceptance or rejection of expert evidence lies within the decision-making responsibility of the trial judge. We cannot say the judge erred when he declined to accept the survey made by the court-appointed surveyor.
Accordingly, the judgment is affirmed.
AFFIRMED.
NOTES
[1] Defendant was granted judgment for the costs of these proceedings against a thirdparty defendant, Adloe Orr, Consulting Engineers, Inc., whose survey was relied on by defendant.
[2] See LSA-C.C. arts. 3478, 853 and 3499.
[3] There exists a line of jurisprudence which holds that the 10-year prescription set forth in LSA-C.C. art. 853 applies only where the lines are fixed based on a survey made in accordance with the formal requirements of LSA-C.C. arts. 833 et seq. See: Christen v. Coulon, 94 So.2d 47 (La.App.Orl.1957); Owens v. T. Miller & Sons Building Supply Company, 101 So.2d 773 (La.App. 1st Cir. 1958); Harvey v. Havard, 225 So.2d 615 (La.App. 1st Cir. 1969).

Another line of cases permits reliance on LSA-C.C. art. 853 where a survey has not been made in compliance with the Codal provisions, but the parties acquiesced in the surveyed boundary for a requisite period of time, or where there has been no prior survey, but visible boundaries have been made by consent of the parties and acquiesced in by them for the required time. See Lacalle v. Chapman, 174 So.2d 668 (La.App. 3d Cir. 1965); Dictum in Opdenwyer v. Brown, 155 La. 617, 99 So. 482 (1924), and in Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957).
We are inclined to adopt the conclusion reached in those cases requiring a survey made in accordance with the formalities set forth in the Code. Further, as stated in 40 Tul.L.Rev. 644 (1966):
"Of the two possible interpretations of article 853, the one requiring a formal survey has more consistent judicial support and is more in keeping with the codal provisions. The interpretation which does not require a formal survey is less settled, the best expressions of the rule are dicta, and there are relatively few instances where it has been applied to allow the prescription of article 853."
[4] Art. 727. Servitudes, continuous or discontinous

"Art. 727. Servitudes are either continuous or discontinuous.
Continuous servitudes are those whose use is or may be continual without the act of man.
Such are aqueducts, drain, view and the like. Discontinuous servitudes are such as need the act of man to be exercised.
Such are the rights of passage, of drawing water, pasture and the like."
[5] Art. 728. Servitudes, apparent or non-apparent

"Art. 728. Again, servitudes are either visible and apparent or non-apparent.
Apparent servitudes are such as are to be perceivable by exterior works; such as a door, a window, an aqueduct.
Non-apparent servitudes are such as have no exterior sign of their existence; such, for instance, as the prohibition of building on an estate, or of building above a particular height."
[6] Art. 765. Acquisitive prescription of continuous apparent servitudes, and of roads

"Art. 765. Continuous and apparent servitudes may be acquired by title, or by a possession of ten years. * * *"
[7] See LSA-C.C. arts. 714 and 699.
[8] See: Bonilla v. Arrow Food Distributors, Inc., 202 So.2d 438 (La.App. 4th Cir. 1967).