355 So.2d 1014 (1978)
Robley J. GELPI, Jr. and Alexander A. Thieneman, Jr.
v.
Florian M. SHALL.
No. 8661.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 1978.
*1015 Casey, Babin & Casey, Joseph S. Casey, New Orleans, for plaintiff-appellant.
Ponder & Richardson, Lamar M. Richardson, Jr., Mandeville, for defendant-appellee.
Before LEMMON, STOULIG and GARSAUD, JJ.
GARSAUD, Judge.
Plaintiffs-appellants are the owners of plots 229 and 230 of Cleary Subdivision in Jefferson Parish, which lots are contiguous to plot 245 and a portion of plot 246, belonging to defendant. Plaintiffs filed this suit in boundary under Civil Code Article 823 on January 21, 1976 to establish the western boundary line of their property and the eastern boundary line of defendant's property. To this petition defendant filed exceptions of ten, twenty, and thirty years' prescription. After the trial of these exceptions, the trial judge found the prescription of ten and twenty years (C.C. Art. 853) to be inapplicable under Fiorello v. Knecht, 334 So.2d 761 (La.App. 4th Cir. 1976), and these are not urged in this appeal. The trial judge, however, sustained the exception of thirty year prescription provided for in Civil Code Article 852 and plaintiffs appeal from that judgment.
Defendant, Florian Shall, purchased plot 245 and a portion of plot 246 from Mr. and Mrs. Joseph Estain, by deed dated March 20, 1951. The Estains had acquired the property on September 2, 1931, and had operated a dairy, using a barn located within the disputed area from the 1930's until the sale to the defendant. (Tr. of November 5, 1976, pp. 34-35) Defendant's property has been fenced at least since his acquisition in 1951 along the boundaries indicated by old pipes set in concrete on the survey of F. G. Stewart dated December 1, 1950 (identified as exhibit P-3), which was attached to the Act of Sale in which defendant acquired this property. As the trial judge correctly described in his Reasons for Judgment,
"It was the contention of the defendant that his property has been separated from that of the plaintiffs' by a fence which had been in continuous existence for a period of over thirty years and ran along a line marked by an old pipe set in concrete at the southeastern corner of defendant's property, an old gate standing at approximately the mid-point of defendant's alleged eastern boundary, and a pipe set at the northeastern corner of defendant's property."
This description coincides with the boundaries indicated on the Stewart survey, exhibit P-3.
Plaintiffs are real estate developers who acquired plots 229 and 230 in 1975. They testified that they were aware that the fences and barn of defendant encroached on their property when they purchased the land. (Tr. of November 5, 1976, pp. 47-48 and 50-57) The plaintiffs argue that there was no actual uninterrupted possession within visible bounds for the required period and that the real boundary is reflected by the surveys of John Krebs, dated June 18, 1975, and Gerald B. Dunn, dated October 21, 1976. The disputed area varies from 24 to 29.3 feet in width, running the length of the common boundary shared by these parties.
*1016 The issue is simply one of fact, especially with reference to whether the visible boundaries existed from January 1946, when the Estains, defendant's predecessor in title, possessed the land.
A person pleading prescription of thirty years bears the burden of proving unequivocal, continuous, uninterrupted, public and adverse possession by a preponderance of the evidence. Bradford v. Thomas, 344 So.2d 717 (La.App. 2d Cir. 1977); Humble v. Dewey, 215 So.2d 378 (La.App. 3rd Cir. 1968). The requirements for establishment of the prescription of thirty years are clearly stated in Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957), and most recently reiterated by our Supreme Court in William T. Burton Industries, Inc. v. Wellman, 343 So.2d 996 (1977):
"[W]here there is a visible boundary which has been in existence for thirty years or more and the defendant in a boundary action and his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years should be sustained. It is our view that for the rule to be applicable two conditions must concur: First, there must be a visible boundary, artificial or otherwise; second, there must be actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the title and embraced within the visible bounds." 96 So.2d at 843.
The testimony to establish the two essential factors called for in a case of this kind was something less than precise, which is to be expected, given the number of years that have elapsed. Nonetheless, the trial judge found that the evidence preponderated in favor of defendant, who, although he had the burden of proof on the trial of this exception, sustained his burden to the satisfaction of the trial judge. Where a boundary is located is a question of fact to be determined by the trier of fact, and should not be reversed on appeal in the absence of manifest error. Fiorello v. Knecht, 334 So.2d 761 (La.App. 4th Cir. 1976); Union Producing Company v. Placid Oil Company, 178 So.2d 392 (La.App. 1st Cir. 1965), writ refused 248 La. 447, 179 So.2d 432 (1965); Latiolais v. Robert, 8 So.2d 347 (La.App. 1st Cir. 1942).
Not only is there clearly no manifest error on the part of the trial judge, but there is also an extensive and very well-reasoned exposition by the trial judge of the rationale for his judgment, a substantial part of which we quote and adopt:
"After a thorough review of the record, this Court finds that the testimony and evidence adduced at the trial preponderately establishes that the fence line in question on the eastern boundary as delineated by the Stewart survey (P-3) was constructed more than thirty years before the institution of this suit by defendant's author in title, separating the present properties of plaintiffs and defendant; that it was maintained as a visible existing boundary between said estates; and that the land so enclosed was actually possessed by the defendant and his author in title for more than thirty years. This Court has found inconsistencies in the testimony of the witnesses produced by the defendant and the plaintiffs. However, this Court attributes these inconsistencies to the inability of a person to recall with exactitude, facts as they existed thirty to forty years ago.
"The record overwhelmingly establishes that since the defendant, Mr. Florian Shall, took title to his property in 1951, it has been fenced along a line on the eastern boundary as delineated by the Stewart survey made a few months prior to Mr. Shall's purchase of the property and said fence was still standing when this suit was instituted in January of 1976. At the trial several witnesses testified that they recalled that the fence was standing some six to eight months prior to trial of this exception, which would be in March of 1976. The record also establishes that Mr. Shall used the area between the fence and the barn for a drainage ditch which extended from alongside his barn down to his southern most boundary line. The difficult question to be answered by *1017 this Court was whether or not said fence and ditch were present before Mr. Shall bought the property, and more particularly whether it has existed since January of 1946 or before. On this point the testimony was not clearcut, but, as previously mentioned, it preponderates in favor of the existence of the fence.
"Of all the witnesses who testified at the hearing of these exceptions, only four exhibited first hand knowledge of the property during the period in question, 1940-1950. These witnesses were Walter Smith, Earl Patrick, Jr., and Margaret Ingulia, and Frank Romano. The defendant, Mr. Shall, testified that the fence and gate were in existence for 30-40 years, but there was no showing that he had personal firsthand knowledge to this effect.
"Mr. Walter Smith testified that he had worked and lived at a pumping station on the lakefront near the subject property for the past forty-seven years, and that he passed by the property many times on the Old Hammond Highway, as that was the only way in or out for many years. He testified that the barn and the house were built in approximately 1934 and that the barn has never been moved. He testified that a family by the name of Estain lived there when the buildings were first erected and that later Mr. Shall bought the property from them. Mr. Smith testified that there were fences all over the area, but when asked if the Estain's and then later on Mr. Shall's property was fenced, he answered that it was. See trial record, October 22, 1976, p. 34, l. 21.
"The next witness to testify with firsthand knowledge of the property during the crucial years was Mr. Earl Patrick, Jr. Mr. Patrick was familiar with the property since 1945 or 1946 as he dated one of Estain's stepdaughters and was a friend of an Estain boy. T.R., Nov. 5, 1976, p. 20, l. 22 et seq. On direct examination at T.R., p. 21, l. 8 he testified as follows:
`Q. To your knowledge, was this property fenced ever since your knowledge of it?
A. Yes, it was fenced along the side of the barn and the night pasture.'
"Mr. Patrick drew in the fence line as he remembered it on exhibit P-7 and this Court notes that it is approximately the same as the eastern boundary delineated on the Stewart survey, P-3. Mr. Patrick further testified as follows at T.R., p. 25, l. 4:
`Q. Since 1945, up until the fence was bulldozed down, were these fences always in place?
A. Yes, sir.'
"And at T.R., p. 25, l. 16:
`Q. And these fences were continuously in place?
A. Positively.'
"Upon questioning from the Court, Mr. Patrick further testified at T.R., p. 27, l. 1:
`The Court:
Let me ask you this: Was there anything there that led you to believe that there was a property line between the properties?
The Witness:
You mean between his property and the DiBella property?
The Court:
Yes.
The Witness:
Only the fence that ran down the side of the barn.'
"The next witness, called by the defendant, who exhibited firsthand knowledge of the property during the crucial years was Ms. Margaret Ingulia, whose father owned the property before Mr. Shall, and who lived on and visited the property between 1933 and 1950. She testified that the barn was still standing in its original location; that the eastern boundary of the property was always along the easterly side of the barn (T.R., p. 36, l. 26); that there was a ditch to the easterly side of the barn running to the south, T.R., p. 37, l. 22 et seq.; that the corners of the property were marked by pipes set in cement, T.R., p. 40, l. 8, and that her father fenced in what was called his property, that said fences were located in only one place and that the fence line was located presently as she always remembered it, T.R., p. 41, l. 11, et seq.
*1018 "Upon cross examination, Ms. Ingulia testified as follows at T.R., p. 44, l. 13:
`Q. Now, you referred to surveyor stakes set in concrete, and do you know who set these stakes in concrete?
A. No, I don't know.
Q. Could they have been covered with earth and would the earth have had to be removed to find them?
A. I don't know, but they had to be visible when they put the fences up.
Q. But normally if you walked out in the yard, would you stumble over them?
A. No.
Q. So, you could see them?
A. Well, the fences were parallel to them, and you would be hitting the barbed wire fence if you walked on them.'
"The next witness with knowledge of the property prior to 1950, and the only witness of this sort called by the plaintiffs was Mr. Frank Romano, the son-in-law of Nick DiBella, who was plaintiffs' author in title. Mr. Romano worked on the DiBella property seven days a week from 1945 to 1947. He aided Mr. DiBella in his hog raising activities. Mr. Romano testified that there was no fence along the eastern boundary of the Estain property. T.R., p. 55, l. 15, et seq. Mr. Romano also testified that he never had occasion to go over to what was then the Estain barn, that he didn't notice any ditch along side the Estain barn, but that ditches were common in the area and that it was also common to fence the ditches to keep livestock out, and at T.R., p. 62, l. 2 he testified as follows:
`Q. Did you consider these ditches and these fences to be boundaries of the property?
A. No, not necessarily.
Q. What did you consider to be the boundaries?
A. Well, I guess the fences, but not the ditches. The ditches don't necessarily have to be the boundaries of the property.
Q. But, you did consider the fences in connection with that?
A. Well, I am sure that it would have been the property line.'
"Mr. Romano's testimony that the Estain's property was not fenced is in direct conflict with the testimony of Mr. Walter Smith and Ms. Margaret Ingulia who had knowledge of the Estain property over a long period of time. Mr. Romano's knowledge of the Estain property was limited to twothree years. Due to Mr. Romano's limited knowledge of the Estain property, this Court has given his testimony less weight than that of Mr. Smith and Ms. Ingulia.
"The plaintiffs vigorously argue that the Stewart survey, P-3, by which the defendant, Mr. Shall, acquired the property shows no evidence of any fence erected along what it delineates as Mr. Shall's eastern boundary. The only witness to testify in this regard was an expert surveyor, Mr. John Krebs. Mr. Krebs testified that although boundary fences are usually indicated on a survey, it is within the judgment of each individual surveyor whether or not to indicate fence lines. Throughout the trial of these exceptions it was established that fences were a common place thing in the area and that they ran in all directions. The Stewart survey does not indicate any fence lines whatsoever. This Court believes that it is very possible and likely that Mr. Stewart purposefully deleted any reference to fence lines on his survey, especially in view of the strong testimony by Ms. Ingulia, Mr. Smith, and Mr. Patrick that the property was fenced.
"For the foregoing reasons, this Court holds that the defendant has carried his burden of proof in establishing that there had been a visible boundary between the properties of the defendant and the plaintiffs, and that he and his ancestors in title have been in possession of said property up to the visible boundary for a period in excess of thirty years."
For these reasons, the judgment of the trial court granting the exception of thirty years' prescription is sustained.
As the trial court was able in its judgment to delineate with particularity the boundary of the defendant's property, there *1019 is no need to order a survey to fix judicially the boundary. William T. Burton Industries, Inc. v. Wellman, supra. As indicated in the trial court's judgment, the boundary is declared to be as delineated on the survey of F. G. Stewart, made and certified correct on December 1, 1950 and attached to the Act of Sale between Mrs. Lillian Gerhardt, wife of/and Joseph Estain and Florian M. Shall, passed on March 20, 1951.
AFFIRMED.