667 So.2d 1197 (1996)
Prescott H. RATHBORNE
v.
Delbert E. HALE.
Prescott H. RATHBORNE
v.
CITY OF NEW ORLEANS, et al.
Nos. 95-CA-1225, 95-CA-1226.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1996.
Rehearing Denied February 22, 1996.
*1198 Charles E. McHale, Jr., New Orleans, for appellee.
James G. Derbes, New Orleans, for appellant.
Before BYRNES, LOBRANO and MURRAY, JJ.
LOBRANO, Judge.
This appeal arises from an action between two adjoining landowners over the ownership of a portion of a five-foot alleyway that separates their French Quarter residences on Barracks Street in the City of New Orleans.

FACTS AND PROCEDURAL HISTORY:
In March, 1974, Dr. Delbert E. Hale purchased the property at XXX-XXX-XXX Barracks Street (hereinafter 929 Barracks).[1] In 1981, Prescott H. Rathborne purchased the adjoining *1199 property located at 923 Barracks Street.[2] Located between the properties is a five foot, three inch (5'3") alley. The portion of the alley in dispute in this case measures 2 feet, 3 inches (2'3") in the front to one foot, four inches (1'4") in the rear.
On December 24, 1981, Rathborne filed a Petition for Writ of Injunction and Damages against Hale seeking an order enjoining Hale from prohibiting Rathborne or anyone acting on his behalf from entering and using the alley. Rathborne's suit was based on the claim that his title extended to the middle of the alley.[3]
On June 21, 1982, Hale answered the petition and filed a reconventional demand including a petition to fix the boundary pursuant to Civil Code Article 794 and for damages. Hale alleged that he and his ancestors in title exercised exclusive possession and control over the entire alley for over thirty years and thereby acquired title by virtue of 30-year acquisitive prescription.
On March 16, 1984, Rathborne filed a First Supplemental and Amending Petition alleging that Hale had wrongfully built a brick wall, installed planters, air conditioning and pool equipment and other encroachments on his portion of the alley. Rathborne sought removal of the encroachments and pecuniary damages.
In February, 1994, Rathborne filed a second suit for writ of injunction and damages naming as defendant Dr. Hale, the City of New Orleans and the Vieux Carre Commission and its members. Rathborne sought an order against the City and the commission to allow him to demolish a brick wall erected by Hale in the alley adjacent to Rathborne's property. This action was predicated upon Civil Code articles 667 and 668 which allows judicial relief from an adjoining neighbor who uses his property to the injury and detriment of the other neighbor. The two actions were consolidated and proceeded to trial on January 9 and 10, 1995.
At the conclusion of the trial, the court ruled in favor of Rathborne and against Hale overruling Hale's plea of 30 years acquisitive prescription. The court fixed the boundary in accordance with the survey of John E. Walker, Civil Engineer and Surveyor, dated July 9, 1963. The court found that Hale's ownership extended to three feet (3') of the alley and Rathborne's to two feet, three inches (2'3") of the alley (the disputed area). The court further ordered that the encroachments erected by Hale be removed; that the wall erected by Hale was built without the proper permits thus entitling Rathborne to proceed through proper administrative channels to obtain a permit to demolish the wall; and that Rathborne's claim for damages against Hale is reserved. Hale subsequently filed a motion for a new trial which was denied.
In his sole assignment of error, Hale asserts the trial court, "[i]n both applying a clear and convincing burden of proof, and then viewing the evidence in the light most favorable to the adverse party, ... wrongfully placed upon Dr. Hale a heavier burden of proof than is required by controlling authority, thereby undermining Louisiana's strong public policy favoring the maintenance of long-established boundaries." His claim and argument to the disputed 2'3" of the alley is based solely on his alleged thirty years of uninterrupted possession.

THE LAW:

A. The burden of proof:

In asserting that the trial court required a heavier burden of proof than is required, Hale specifically cites the trial court's oral reasons wherein the Court stated that the testimony should be viewed "in the light best, most suited towards that person who believes he has ownership under title" and "... it is [the Court's] duty to try to maintain ownership of property, whenever possible, unless there is a clear and convincing showing of adverse ownership or intent to adversely possess."
*1200 A person pleading acquisitive prescription of 30 years bears the burden of proving unequivocal, continuous, uninterrupted, public and adverse possession by a preponderance of the evidence. Gelpi v. Shall, 355 So.2d 1014, 1016 (La.App. 4th Cir.1978); Bradford v. Thomas, 344 So.2d 717 (La.App. 2nd Cir.1977), writ denied 346 So.2d 714 (La. 1977). In such cases, every presumption is in favor of the holder of the legal title. Bradford v. Thomas, supra; Babin v. Montegut Insurance Agency, Inc., 271 So.2d 642 (La.App. 1st Cir.1972). See also, Town of Broussard v. Broussard Volunteer Fire Department, 357 So.2d 25 (La.App. 3rd Cir. 1978). However, despite this presumption there is a strong public policy embodied in the law that where one possesses for thirty years within visible bounds, the boundary must be fixed according to the limits of possession, rather than title. La.C.C. art. 794, and discussion, infra.

B. The requirements necessary to establish adverse possession:

Dr. Hale's reconventional demand is a boundary action. His claim is based on Civil Code Article 794, which provides:
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.
In Gelpi v. Shall, supra, at 1016, this Court succinctly stated the law relative to acquisitive prescription:
"The requirements for establishment of the prescription of thirty years are clearly stated in Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957), and most recently reiterated by our Supreme Court in William T. Burton Industries, Inc. v. Wellman, 343 So.2d 996 (La.1977):
`[W]here there is a visible boundary which has been in existence for thirty years or more and the defendant in a boundary action and his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years should be sustained. It is our view that for the rule to be applicable two conditions must concur: First, there must be a visible boundary, artificial or otherwise; second, there must be actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the title and embraced within the visible bounds.'" (emphasis added)
It is undisputed that Dr. Hale is claiming ownership beyond what is described in his title. Even though his reconventional demand seeks to establish the boundary, the possession required to prove acquisitive prescription pursuant to the boundary action of Civil Code article 794 is the same as that under the general acquisitive prescription articles of the code.
The possessor, in order to claim ownership by acquisitive prescription, must have corporeal possession, or civil possession preceded by corporeal possession.[4] The possession must be continuous, public, and unequivocal. La.C.C. art. 3476.[5] Furthermore, possession extends only to that which has been actually possessed. La.C.C. art. 3487. The corporeal possession necessary to support prescription is governed by the nature of the land and the use to which the land is put. Where a party claims only the corporeal detention without title, he must show an adverse possession within enclosures. See, La.C.C. art. 3487; Suire v. Vermilion Parish School Board, 614 So.2d 203, 205 (La.App. 3rd Cir.1993). He must also show a positive intention to take and commence possession of *1201 the property as owner. La.C.C. art. 3424; Levatino v. Williams, 396 So.2d 380 (La.App. 1st Cir.1981).
An enclosure does not require a fence but it does require that the land possessed as owner may be established with certainty, either by natural or artificial marks, sufficient to give notice to the world of the character and the extent of the possession, as well as its full identity and its certain boundaries. Suire v. Vermilion Parish School Board, supra, citing Alford v. Jarrell, 471 So.2d 970 (La.App. 1st Cir.1985); Hesser v. Richardson, 579 So.2d 1136 (La.App. 2nd Cir.1991).
A title holder may acquire more land than his title calls for by possessing property beyond his title for thirty years without interruption and within visible bounds by "tacking" on the possession of his ancestor in title. La.C.C. art. 3442; Livingston v. Unopened Succession of Dixon, 589 So.2d 598, 604 (La.App. 2nd Cir.1991). "Tacking" pursuant to Civil Code Article 794 requires some juridical link, or written instrument which passes to possessor from his ancestor in title. The link or title need not encompass or include the particular property to which the possessor claims prescriptive title.[6] Pursuant to article 794, one may utilize tacking to prescribe beyond title on adjacent property to the extent of visible boundaries. Brown v. Wood, 451 So.2d 569, 574 (La.App. 2nd Cir.1984), writ denied, 452 So.2d 1176 (La.1984). A house may serve as a clear visible marker sufficient to establish a boundary. See, Cuthbertson v. Unopened Succession of Tate, 544 So.2d 1236, 1240 (La.App. 3rd Cir.1989).
A reading of the trial court's reasons does not convince us that a heavier burden of proof was required of Dr. Hale. It is just as reasonable to conclude from the language used that the trial court was paraphrasing the requirements necessary to prove adverse possession. Nonetheless, even if we assume, arguendo, that the trial court applied an incorrect burden of proof, that does not preclude this court from testing the evidence presented pursuant to the proper burden of proof, nor does it prevent us from applying the manifest error standard to the court's factual conclusions. To prevail on the merits Hale must prove by a preponderance of the evidence that he and his ancestors in title had unequivocal, continuous, uninterrupted, public and adverse possession of the alley for at least 30 years.

C. Standard of appellate review:

Whether a party has possessed property for 30 years without interruption is a factual issue. Livingston v. Unopened Succession of Dixon, supra.
It is axiomatic that an appellate court may not disturb a fact finder's conclusions unless they are clearly wrong or manifestly erroneous. This well established principle was again explained and reiterated by our Supreme Court in the recent case of Ferrell v. Fireman's Fund Insurance Co., 94-1252 (La. 2/20/95), 650 So.2d 742.
Dr. Hale argues we are not bound by the manifest error rule because the trial court applied the wrong burden of proof. Although we disagree with that interpretation of the court's reasons, the court's factual findings are still subject to the clearly wrong standard. However, we determine the real question posed in this case is not so much the trial court's credibility determinations but the sufficiency of the evidence to support thirty year possession by Dr. Hale.[7]

TITLE OWNERSHIP:
A review of the chain of title for each property reveals the following:

*1202 a) 925-929 Barracks Street: (Hale property)
Hale acquired the property on March 5, 1974 from Mr. & Mrs. Joseph E. Sick, III. The property description reflects that the measurements are in accord with the survey made by Gilbert, Kelley and Couturie, Inc., dated February 18, 1974. The survey is attached to the act of sale and discloses that a 5 foot, 1 inch alley separates 929 Barracks Street and 923 Barracks Street. The 929 property's portion measures 2 feet, 10 inches. The 923 property's portion measures 2 feet, 3 inches.[8]
Hale's ancestor in title, Joseph E. Sick, III., acquired the property on June 12, 1969 from E.C. Catlett. The property description in that act of sale reflects that the measurements are in accord with the survey of E.L. Eustis and Sons dated September 27, 1962. The Eustis survey shows the 929 portion of the alley to be 3 feet. In addition, a survey by Walter A. Stone, dated June 2, 1969 also shows the 925-929 portion of the alley to be 3 feet.
The Eustis survey is referenced in each preceding act in the chain of title dating back to a sheriff sale on August 29, 1962 where the description was in accordance with the 1941 survey of Gilbert and Kelley. That survey shows a 5 foot, 1 inch alley between the two properties, with the 929 portion measuring 2 feet, 10 inches.[9]
b) 923 Barracks Street: (Rathborne property)
Prescott H. Rathborne acquired 923 Barracks on September 1, 1981 from Jonisue Cogdell. The property description in that sale reflect that all measurements are in accord with the survey of John E. Walker, dated July 9, 1963, recertified July 21, 1981. The Walker survey shows a 5 foot, 3 inch alley between the two properties. The portion attributed by Walker to 929 Barracks measures 3 feet, and the portion attributed to 923 measures 2 feet, 3 inches.
The Walker survey is referred to in each preceding act in Rathborne's chain of title dating back through an act on July 15, 1963. Prior to that date, a January 6, 1956 sale and a May 4, 1950 sale reference a survey by R.P. Rordam dated October 22, 1935 which placed the 923 property line at the wall of the 923 cottage. Attached to the January 6, 1956 sale, although not referenced in the property description, is a survey dated January 6, 1956 by H.E. Sutch.[10] That survey also shows the entire alley encompassed within the 929 property line.
Thus the Walker survey in the 923 chain of title, and the Gilbert, Kelley and Couturie, and the Eustis surveys, in the 929 chain of title show an alley of 5 feet, 1 inch to 5 feet, 3 inches between the properties. Depending on which survey is referenced the 929 portion of the alley is from 2 feet, 10 inches to 3 feet, while the 923 portion is 2 feet, 3 inches. After rejecting Dr. Hale's prescriptive plea, the trial court fixed the boundary in accordance with the Walker survey, and gave no credit to the Rordam or Sutch surveys.[11] Undoubtedly, with the exception of the Rordam and Sutch surveys, Dr. Hale is claiming ownership in excess of what is called for in his title and thus must rely on the acquisitive prescription of Civil Code article 794 to support his claim. We now review the evidence in support of that claim.

*1203 TESTIMONY ADDUCED AT TRIAL:

DR. DELBERT E. HALE:
Dr. Delbert Hale testified that he purchased the property at 929 Barracks Street in 1974. He stated that the occupants of 923 Barracks Street never had a key to the alley gate. He testified that from the time he purchased the property he possessed the alley exclusively. He allowed the occupants of 923 Barracks access only for maintenance, such as painting the side of their house. He allowed one neighbor access to paint the house before selling it.
Hale testified that in 1975 he erected a new brick wall when he installed his swimming pool.[12] The wall was built where there previously existed flower beds. He removed and rebuilt the beds next to the new wall. The new design was to allow water to drain back towards the slave quarters.
At the time he purchased the property, Hale was informed by the previous owner, Mr. Sick, that the property encompassed the area from gate to gate including the alley.

PRESCOTT RATHBORNE, III:
Prescott Rathborne, III testified that he purchased the property at 923 Barracks Street in 1981. He stated that when he purchased the property he was given a key to the alley gate. The key opened the gate until the dispute arose with Dr. Hale shortly after he moved in. After the onset of the dispute, Hale changed the lock prohibiting him access. He had the locks changed twice.
Rathborne testified that he replaced the gutters on the alley side of his house and that they drain into the alley. He stated there were no new down spouts only a replacement of pre-existing down spouts. He also testified that when he purchased the property, all four windows overlooking the alley were sealed from the inside.

DIANA T. ADAMSKI HALE:
Diana T. Adamski Hale testified that she is the former wife of Dr. Delbert E. Hale. She stated that during her marriage to Dr. Hale, she lived at 929 Barracks Street from 1974 to 1984. She testified that she was living there in 1981 when Rathborne purchased 923 Barracks Street.
Diana Hale testified that Rathborne did not have a key to the alley gate until he had one made. She stated that from 1974 to 1981, none of the occupants of 923 Barracks Street had a key to the alley gate nor did they use the alley. She recalled only one time that Lisa Oudt, daughter of the then owner of 923 Barracks Street (Jonisue Cogdell) asked for access to examine the side of the house.
She testified that she caught Rathborne and several locksmiths changing the locks on the alley gate. After Rathborne changed the lock, she and her husband changed it again. Rathborne changed it a second time and so on. This back and forth activity of changing the lock occurred at least six times.
Diana Hale testified that the down spouts Rathborne installed on the alley side of his house were new and not replacements. She further stated that he installed them to drain into the flower beds on their side of the new wall causing a considerable amount of water to collect in the rear of the properties.

EUNICE VILLEGAS:[13]
Mrs. Villegas testified that she was married to the late Albert Villegas. She and her husband owned and resided at 923 Barracks Street from 1950 to 1963. She stated that for the entire time they resided there their neighbors were Mr. & Mrs. Frank Soule who resided at 929 Barracks Street.
Mrs. Villegas stated that she and her husband closed in the side of their front porch which adjoins the alley between 929 Barracks Street. This was done for security reasons. They were worried that people would enter their porch from the alley. Mrs. Villegas testified that she and her husband enclosed the four windows on the alley side in order to afford themselves privacy. On the *1204 inside of this wall they built bookcases in front of the sealed windows. She stated that she and her husband did not install the awnings on these same windows.
Mrs. Villegas stated that she and her husband never had access to the alley. They never had a key to the gate. The alley always had a gate in the front. However, she admitted that she didn't know if the gate had a lock. She stated that the Soules never used the alley. "It [the alley] was kept for unloading something or putting in soil or dirt in the garden." She testified that she and her husband used the alley on one occasion when they painted their house. They asked permission of the Soules. Mrs. Villegas testified that she and her husband never owned the alley. However, she admitted that this was her belief and that she never read the act of sale when the property was purchased, nor the survey. She stated she deferred to her husband on these matters.

MARY CECILE PICKENS:[14]
Mrs. Pickens testified that she and her late husband, Edward Sick owned and resided at 929 Barracks Street from 1968-1974 when they sold the property to Dr. Hale. Their ancestor in title was Mitchell Wright.
Mrs. Pickens testified that the occupants of 923 Barracks Street never possessed a key to the alley gate and never used the alley. She further testified that she and her husband did not use the alley for ingress or egress. Mainly they used it to gain access to their attic. She stated that there were no openings in the old wall allowing access to the alley from 923 Barracks Street. She testified that she and her husband always believed the alley belonged to them. She stated that she and her husband left the alley as it was when they purchased the property. They did not build a fence or add any improvements. Mrs. Pickens stated that if her neighbor at 923 Barracks, Fritz Ingram, would have asked for access, he would have been allowed to use the alley on an "as needed" basis. He would not have been given a key because this would have been like giving him a key to their home.

OWEN MITCHELL WRIGHT:[15]
Mr. Wright testified that he owned and resided at 929 Barracks Street from 1963 to 1966. He stated that when he moved in, Mr. & Mrs. Villegas were his neighbors for a short period of time before they sold 923 Barracks Street to Fritz Ingram. When he purchased 929 Barracks, a wooden gate existed which closed off the alley from Barracks Street. It was old, rotten and in disrepair. He replaced the wooden gate with a masonry and wrought iron gate. Before installing the new gate, he asked Ingram for permission to bolt the metal gate frame to the side of 923 Barracks Street. He stated that the four windows which overlooked the alley from 923 Barracks Street were closed with shutters. He testified that he never saw them open. He testified that he visited Ingram often and noticed that on the inside wall, the windows were covered with bookcases.
Wright testified that the old brick wall in the rear of the alley was there when he purchased the property. He did not add to the wall or build an additional wall or fence.
Wright stated that neither Ingram nor the Villegases possessed a key to the gate, used the alley or maintained the alley. Wright testified that he treated the alley as if he owned it. He admitted, however, that he did not place equipment in the alley or make other improvements. All he did was to keep it clean of leaves and debris.

WILBERT L. ARGUS, JR., A.I.A.:
Wilbert L. Argus, Jr., a licensed architect, was recognized as an expert in architecture. He testified on behalf of Rathborne who hired him to construct a model of the two properties. Mr. Argus stated he built the model based on the July 9, 1963 survey of John W. Walker which was updated last on October 3, 1983. Both parties stipulated that the model represented the measurements found in the Walker survey.
Argus stated that there was no ingress or egress onto the Rathborne property through the alley gate.
*1205 On cross examination, Argus stated that the title shows 923 Barracks Street has a frontage of 17.11 feet and 1 line. Lot 14 or 921 Barracks Street has a frontage of 30 feet. Both measurements equal a total frontage for Rathborne's property of 47.11 feet and 1/8th inch. The Walker survey, however, shows a total frontage of Rathborne's property to be 51.7 feet and 4 lines or 3 feet 8 and 3/8 inches more than the title.
In reviewing the 1935 Rordam survey, Argus could not say for sure if there appeared to be an offset between 923 and 929 Barracks. He stated that there was a notation on the survey that the top of 923 Barracks leans over the neighbors' property (929 Barracks). However, he could not be sure by how much it leaned over. It appeared on the survey that it leaned over by 1 inch. Argus also reviewed the 1956 Sutch survey. He stated that he did not consider it a true survey because it had no surveyor's seal. He interpreted it to show a setback on the left side between the two properties to be 3 and 7/8 inches. He stated the Walker survey is the more accurate because it is certified, sealed by a registered surveyor and updated through 1983. He stated the Walker survey shows Rathborne's property owns 2 feet, 3 inches of the alley which includes the old brick wall. He testified that when he examined the Rathborne house he saw evidence of what may have been a panel covering what appeared to be an opening from the house into the alley. He admitted that this was just speculation.
Argus testified that according to the Walker survey, the pool equipment, air conditioning compressor and part of the hot water heater closet did not encroach the Rathborne property. However, the new brick wall[16] and the brick planters encroached the Rathborne property.
At the close of his testimony, the trial court asked Argus if the Rordam and Sutch surveys were consistent. Argus answered that they were consistent in the rear footage but not in the front footage as the Sutch survey showed no front footage.

JOSEPH F. NEWELL:
Joseph F. Newell testified that he was an architectural historian for the Vieux Carre Commission from 1980 to 1986.
Newell stated that the Hale house is a creole cottage that was built around 1819 or 1820. The Rathborne house is a shotgun bungalow built sometime between 1910 and 1920. In arriving at his conclusions, Newell testified that he used Sanborn insurance maps from 1876 through 1951. The earliest maps showed no openings in the wall or along the lot line separating the two properties. The alley appeared to be exclusively on the Hale property. The map dated 1940 and updated in 1951 shows distinct lot lines with the alley belonging to the Hale property. The map also shows a fire exit onto the alley from the Hale property but none from the Rathborne property. While Newell stated these maps showed use, a survey would be of more legal significance. Several photos taken in 1946 by Walter Cook Keenan, director of the Vieux Carre Commission showed the alley was completely blocked off by a wall from the Rathborne property making it usable only from Hale's property.
At this point in Newell's testimony, the Court sustained an objection by Rathborne based on relevancy and allowed the rest of Newell's testimony only as a proffer. The court based its ruling on the irrelevancy of the evidence prior to 1951, thirty years prior to suit being filed. Hale argues this was error and that Newell's testimony was relevant to the issue of use and possession. We agree with Hale on this evidentiary issue, and review the proffered testimony.
On proffer, Newell stated that his research showed no evidence that the alley was accessible from the Rathborne property from 1935 to the present.
On cross examination, he admitted that he had not reviewed the Walker survey showing that in 1963 a wooden gate existed at the entrance to the alley. He testified that it appeared from the 1946 Keenan photos to be a wall rather than a gate and that it was a guess on his part that it was a wall. He admitted that Mrs. Villegas stated that she *1206 used the alley to paint her house which would be some evidence that the alley was not for the exclusive use of the Hale property.
Newell stated the Sanborn maps are scale surveys completed by insurance companies which do not reflect title measurements. He admitted the Walker survey places the old brick wall on the Rathborne property, that awnings overhung the alley and that the Rathborne property was given 2 feet and 3 inches of the alley. He also admitted that the Eustis survey of 1962 shows Hale as having 3 feet of the alley and Rathborne having 2 feet, 1 inch and 4 lines of the alley.
At the close of the proffered testimony, Hale's counsel requested leave to amend his answer to deny any admission that the Walker survey is correct. The Court denied the request stating that he would give no weight to Newell's testimony on this issue because Newell is not a qualified surveyor.

JOHN E. WALKER, C.E.:
John E. Walker testified that he is a land surveyor and civil engineer. He testified he originally surveyed 923 Barracks Street on July 9, 1963. This survey was subsequently recertified on December 3, 1971, July 21, 1981, December 17, 1981, October 20, 1982 and October 3, 1983.
Walker stated that in 1963, the entrance to the alley was closed off by a wooden gate. From the property line (by title) the old brick wall measured 1 foot, 5 inches in the front to 1 foot, 2 inches and 4 lines toward the rear of the property. The windows overlooking the alley were covered with awnings of metal or wooden slats.
In preparing his survey, Walker testified he used the August 9, 1941 survey of 929 Barracks Street completed by Earl Kelley and the 1962 survey of E.L. Eustis. Walker stated he surveyed the properties to arrive at actual rather than title measurements. The Eustis survey showed an alley measuring 5 feet, 1½ inches. Of that total, 3 feet was shown to belong to 929 Barracks Street and 2 feet, 1 inch and 4 lines was shown to belong to 923 Barracks Street.
In addition to showing the existence of the alley, the Kelley survey showed the existence of a "fence" toward the rear of the alley. An arrow pointed to the property line of 923 Barracks Street indicating the "fence" was on the Rathborne property. When questioned if the "fence" was brick or some other material, Walker stated that it was probably not brick because the survey would have indicated a "fence wall" or "brick wall".
Walker testified that when he completed his measurements, the frontage of the entire block measured 4 feet, 11½ inches more than the title measurements.
On cross examination, Walker testified that Rathborne's title is figured by measuring from the corner of Dauphine Street rather than Burgundy Street. The actual measurements of the entire block of Barracks Street equals 319 feet, 3 inches and 7 lines. The title measurements of the block equal 314 feet, 10 inches and 5 lines. The actual distance of the Rathborne property from Dauphine Street is 179 feet, 1 inch and 6 lines. The title distance is 175 feet, 5 inches and 3 lines. The actual distance gives 923 Barracks Street 2 feet, 3 inches of the alley, whereas the title distance gives 923 Barracks Street none of the alley. He testified that because there is no such thing as a vacancy or excess property in Louisiana, any excess found between actual and title measurements must be assigned to the various landowners according to whatever possessory features are present such as the old brick wall and the window awnings which extended over the alley. Walker found that all the evidencethe old city maps, prior surveys, possessory features and actual versus title measurementsindicated that the 923 Barracks Street property was entitled to several more feet than shown by the title measurements.
Walker stated that R.P. Rordam was a licensed surveyor but did not have the same standing in the community as other surveyors of his day. H.E. Sutch was primarily a manager of real estate and was not "steeped in the profession of land surveying".
On redirect examination, Walker testified that none of the questions asked by opposing counsel would change his conclusion that the Hale property owns 3 feet of the alley and *1207 the Rathborne property owns 2 feet, 3 inches of the alley.

WILLIAM J. MOUTON, JR., C.E.:
William J. Mouton, Jr. testified that he is a civil engineer, land surveyor and professor of architecture at Tulane University.
He stated that he first became familiar with 923 Barracks Street when he was hired to draw up plans to refurbish and expand the cottage, main house and garage. In drawing up his plans, he used the survey of J.W. Walker. He stated that Walker enjoys a fine reputation as a surveyor.
He testified that he applied for a permit to remove the new brick wall because it blocked Rathborne's house with a unacceptable air space of from 2 to 5 inches. The wall measures 10 feet in height, 4 inches in width and 26 feet in length. The placement of the wall makes it impossible for Rathborne to paint the side of the house which is behind the wall. It also prohibits him from inspecting for termite and other damage. Because of this problem Rathborne is unable to obtain a termite treatment certificate in order to obtain a mortgage to renovate. In addition to these problems, the wall blocks any fire access and causes water infiltration onto Rathborne's property. The weight of the wall has caused sinking of the rear piers of Rathborne's cottage.
Mouton testified that the City would not have approved the wall because its dimensions are not in code and because Hale would have had to prove he owned the part of the alley on which the wall was built. He stated that even if the wall was reinforced with steel rods, it would not be approved because it could not withstand a 20 pound per square foot wind load.
Mouton stated that the wall and the planters are built over a brick drain causing water to collect in the rear of the alley instead of draining.
Mouton testified that he found evidence that at some point in the past, perhaps twenty-five years ago, there existed access to the alley from a door in the left hand wall of the cottage.
On cross examination, Mouton testified that the existence of a stoop, hinges and cracks in the old brick wall shows there was a doorway leading to the alley. He stated that there is a door in existence now that is covered over with shutters. To gain access to the alley, the door would have to be pried open. He testified that he did not know exactly when the old wall was built.
Mouton disagreed that there is an interior pilaster in the new wall. He stated for that wall to be within code, it would have to have 12 inch by 8 inch pilasters, be 8 inches thick and more than 2 inches from an existing wooden wall.
He testified that the weatherboards on the Rathborne cottage are 1 to 2½ inches lower in the rear of the building indicating that the two rear piers or footings were exposed to build the new wall. This exposure has caused considerable settlement of the cottage.

MICHAEL CENTINEO:
Michael Centineo testified that he is the chief building inspector for the City. He stated that on October 21, 1993, Rathborne complained that a brick wall built next to his house was in violation of the city building code. In response to this complaint, he sent city inspector Johnny Odom to investigate. Odom's report showed the wall did not meet the minimum code requirements for width and height. The wall measured 10 feet in height which requires an 8 inch width. The wall is only 4 inches in width. Centineo stated the city took no action on the violation because the Vieux Carre Commission turned down a request to demolish the wall due to the pending litigation.
On cross examination, Centineo testified that if Hale could prove that the wall contained steel reinforcing rods and had an 18 inch wide by 10 inch deep foundation, that he may be prompted to approve the wall.
On redirect examination, Centineo stated that he based his findings on a report by civil engineer William J. Mouton who found the wall to be in violation of the code. He stated that no permit was obtained to build the wall.

JOHN ODOM:
John Odom testified that he inspected the new brick wall on September 23, 1993. He *1208 stated he used the findings of William Mouton when making his conclusions. He found the wall to be only 4 inches thick with 8 inch pilasters. Since the wall should be 8 inches thick, he recommended the wall be either demolished or brought up to code.

JOHN L. SCHACKAI, III:
John L. Schackai, III, testified that he is an architect and general contractor who was hired to renovate the Rathborne property. He determined that the first step was to demolish the new brick wall in order to repair damage to the left side of Rathborne's house. He stated the wall was not built according to code, caused settlement damage to the rear of the house and covers existing windows facing the alley. He testified the wall precludes shoring of the piers of the house because of insufficient clearance. The wall also makes it impossible for Rathborne to have a termite inspection and treatment.

ANALYSIS:
At the trial's conclusion, the court made the following findings of fact:
The uncontroverted evidence shows the old wall belongs to 923 Barracks Street;
The new wall built by Hale and its attachments were constructed in controversy and without the appropriate permits and authority from the City;
The fact that Mrs. Villegas testified that she believed the alley belonged to 929 Barracks Street is not, in and of itself, dispositive of the issue of exclusive use by the owners of 929 Barracks Street;
That the Rordam and Sutch surveys are unreliable;
That the testimony of J.E. Walker was the most credible and reliable; and
That the survey of John E. Walker which attributes 2 feet, 3 inches of the alley to 923 Barracks Street is the most reliable.
We find no manifest error in any of the court's findings.
As we previously concluded, we are satisfied that Dr. Hale is seeking ownership in excess of what is called for in his title. Thus, he bore the burden of proving, by a preponderance of the evidence, that he and his ancestors in title possessed the entirety of the alley, as owner, for a period of thirty years. We find that the evidence is insufficient to carry that burden.
While we agree that the building on 923 Barracks may constitute the visible bounds required in article 794, we find the evidence insufficient to support adverse possession up to that boundary, especially for the period prior to 1963.[17] Arguably, when Wright installed a metal gate and retained a key, in 1963, adverse possession of the alley as an owner began. However, prior to that time, the evidence shows that the alley was seldom used by either property owner except for trash removal, attic access and occasional maintenance. It was closed off from the street by an old wooden gate with no lock, making the alley easily accessible to anyone who wanted to use it. This fact was unquestionably established by the testimony of Owen Wright to the effect that when he purchased the property in 1963, he replaced the old rotten wooden gate with a masonry and iron gate. John Walker corroborated this fact when he testified that when he did his 1963 survey, he easily gained access to the alley through the unlocked wooden gate.
Dr. Hale relies heavily on the testimony of Mrs. Eunice Villegas to support possession prior to 1963. Despite Mrs. Villegas' claim that she never owned the alley, when she and her husband sold 923 Barracks on July 15, 1963 the act of sale described the portion of the alley attributed to 923 as shown on Walker's survey. A thorough review of her testimony shows that her memory was unclear about the status of the alley. Certainly, the fact that she didn't use the alley very much does not cause her to lose ownership, nor does it suffice to support adverse possession by her neighbors. She also testified that her 929 neighbor, the Soules, didn't use the alley very much either. We simply cannot conclude that her testimony is sufficient to prove adverse possession prior to 1963 sufficient to vest ownership in Dr. Hale.
*1209 Dr. Hale argues that even if the wooden gate did not have a key, it still suffices as an enclosure sufficient to give notice of a boundary. Thus, he asserts "a closed gateway at the head of an alley next to a home signals an intention to possess that alleyway to the exclusion of others." While we agree that the gate can suffice as a visible boundary, continuous, uninterrupted, adverse possession up to that boundary is still required. While the gate may have arguably been necessary to keep strangers out of the alley, the evidence is simply insufficient to prove it was placed there with the intent to possess the entire alleyway as owner. Actually, there is no evidence to suggest that Hale's ancestor in title put the wooden gate across the alley, nor is there evidence as to why the gate was there.
Until an adverse possessor proves possession sufficient to meet the legal requirements of ownership, title will control the question of ownership. That is, ownership is presumed by the title holder. Even though we agree that adverse possession need only be proved by a preponderance of the evidence to defeat title ownership, in this case we agree with the trial court that Dr. Hale has failed to meet this burden. Furthermore, we find no error in the court's finding that the wall erected by Dr. Hale was constructed without the appropriate permits and that plaintiff is entitled to have it demolished after following the appropriate city permitting process.
We therefore affirm the trial court judgment. However, because the court reserved to Rathborne the right to pursue his damage claim, we also remand for further proceedings.
AFFIRMED AND REMANDED.
NOTES
[1] The property is legally designated as Lot 12, Square 81, in the Second District of the City of New Orleans.
[2] The property is legally designated as Lots 13 and 14, Square 81 in the Second District of the City of New Orleans.
[3] The dispute erupted when Rathborne and his workmen attempted entry into the alley to complete home repairs and Hale refused them access. The disputed portion of the alley is adjacent and contiguous to Rathborne's property.
[4] Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. LSA C.C. art. 3425. Civil possession occurs when, once acquired, possession is retained by the intent to possess as owner even if the possessor ceases to possess corporeally. LSA C.C. art. 3431.
[5] Although art. 3476 appears under the Civil Code section dealing with ten year acquisitive prescription, the article is also applicable to thirty year prescription. La.C.C. art. 3488.
[6] The ten and thirty year acquisitive prescription pursuant to articles 3473 and 3486 also permit "tacking" the possession of previous owners. However, the juridical link, i.e. the act of sale, between former and present possessors must include the property possessed. Stanford v. Robertson, 144 So.2d 747 (La.App. 3rd Cir.1962); La. C.C. art. 3442, Comment (d).
[7] See, Plummer v. Marriott Corp., 94-2025 (La. App. 4th Cir. 4/26/95), 654 So.2d 843, 847 writ denied, 95-1321 (La. 9/15/95), 660 So.2d 460, wherein we discussed the difference in reviewing factual findings and reviewing for sufficiency of evidence.
[8] The survey also shows an old brick wall fence as situated and belonging to the 923 property. It is this brick fence wall which Hale extended the entire length of the property along Rathborne's cottage two inches from the weatherboards. We were advised in open court that this "new wall" was removed after judgment was rendered by the trial court.
[9] The alley property attributed to 929 Barracks, i.e. 2'10", which added to the original lot frontage of 43 feet, provided a total frontage on Barracks Street of 45'10".
[10] The January 6, 1956 sale is actually a sale and resale by the owner to Sixth District Savings and Loan. Undoubtedly the owner financed or refinanced the property. Actual ownership did not change.
[11] The Walker survey, by measuring the alley's width at 5 feet, 3 inches, coincides with the 929 portion in the Eustis survey (3 feet), and the 923 portion in the Gilbert, Kelley and Courtrie survey (2 feet, 3 inches). The Sutch survey is really irrelevant for title purposes since it is not referred to in any sale in the chain of title. We discuss, infra, the trial court's reasons for rejecting the Rordam survey.
[12] The new wall was attached to an existing old wall which is shown on the Walker and Eustis surveys as entirely on the 923 property. That old wall, however, only extended from the rear of 923 to approximately the rear of the cottage. Dr. Hale's new wall extended the entire length of the property.
[13] Mrs. Villegas testified via deposition of April 20, 1989. At the time, she was 79.
[14] Mrs. Pickens testified via deposition of December 20, 1994.
[15] Mr. Wright testified via deposition of May 22, 1989.
[16] This is the new wall built by Hale in 1975.
[17] Actually, Dr. Hale relies on the building wall in the front portion of the alley and the old brick wall in the rear, as the visible bounds required in Article 794.